FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEC 1 2 2005

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

BRIDGET DALE,
    Plaintiff

  ]
  ]
  ]

v.

  ]
  ]

CIVIL ACTION 2: 05CV1179-T

MICHAEL W. WYNNE, SECRETARY,
DEPARTMENT OF THE AIR FORCE,
    Defendant.

  ]
  ]
  ]

JURY TRIAL REQUESTED
MEDIATION REQUESTED
December 12, 2005

## COMPLAINT

Comes Now the Plaintiff, Bridget Dale, and Complains of Michael W. Wynne,

Secretary, Department of the Air Force, the following:

### PARTIES

1. Plaintiff Bridget Dale (hereinafter Ms. Dale) is over the age of nineteen years and is

    a resident of Texas.

2. Michael W. Wynne, Secretary for the Department of the Air Force, is over the age of

    nineteen years, and is believed to be a resident of Washington D.C.  The

    Department of the Air Force does business in Montgomery County, Alabama which

    is the Middle District of Alabama.

### JURISDICTION and VENUE

3. Venue is proper in the United States District Court for the Middle District of Alabama,

    Northern Division, pursuant to 28 U.S.C. §1391, because the events giving rise to

    the Plaintiff's Complaint occurred in Montgomery County, Alabama which is in the

    Middle District.  Further, the Defendant has offices in and conducts business in

    Montgomery County, Alabama.

4. This Court has original jurisdiction of this cause of action pursuant to 28 U.S.C. §§ 1331, 2201, and 2202 as an action arising under §§501 and 505 of the Rehabilitation Act of 1973, 29 U.S.C. §791 *et. seq.*, and/or the American's With Disabilities Act, 42 U.S.C. 12101 *et.seq.*, to obtain equitable relief, the costs of this suit, including, but not limited to, awards of back pay, compensatory damages and reasonable attorney's fees suffered by the Plaintiff, and caused by Defendant's discrimination against Plaintiff due to Defendant's perception of Plaintiff's disability (Plaintiff's size) and unlawful retaliation due to Plaintiff's filing charges of discrimination with the Defendant's Equal Employment Opportunity Office.

## FACTS

5. Plaintiff Bridget Dale was employed by the United States Air Force for nearly twenty-nine (29) years. Her last position was as a GS-12, Chief of the Business Operations Flight, Services Divisions, Mission Support Group, 42nd Air Base Wing, Maxwell AFB. She served as Chief of the Business Operations Flight for approximately thirteen (13) years and served in that capacity at Maxwell AFB from June 2000, until she was forced to resign from her position on June 13, 2003.

6. Ms. Dale received performance awards each year, until June of 2002. Her ratings, even until her last appraisal in June 2002, were Acceptable, Fully Successful or better. Ms. Dale's appraisals for the preceding 8 years were all "8s and 9s," with 9 being the highest possible rating.

7. Lt. Col. Sykes, Ms. Dale's third-level supervisor, regarded Ms. Dale as being limited in her ability to perform in her position. The manner in which Sykes treated her shows that she was regarded as being so limited. Lt Col Sykes singled Ms. Dale out

2

in staff meetings and berated her. She also made comments, such as she was "tired of certain civil service employees sitting around **fat, dumb and happy,**" all the while looking at Ms. Dale.

8. Lt. Col. Sykes also discriminated against Ms. Dale, based on her perception of Ms. Dale's disability, when she and/or other supervisors appointed Paul Lewis, a subordinate of Ms. Dale who was not overweight, to be the Club Operations manager, a decision that deprived Ms. Dale of much of her authority as Business Flight Chief. Because of their perception of her disability, Ms. Dale's supervisors regarded her as being incapable of performing in her position as Business Flight Chief, even though she has shown she was highly capable for 13 years.

9. As further indication of the discrimination and harassment Ms. Dale suffered, she was denied a transfer to Randolph AFB, because Lt. Col. Sykes "was not willing to replace one **'incompetent'** Business Operations Flight Chief with another one." Sykes reference to Dale as "incompetent," after a 29-year career and a string of outstanding appraisals, are strong evidence of Sykes' discriminatory animus against Dale.

10. Also, Lt Col Sykes went directly to Ms. Dale's subordinates to gather information concerning the Business Operations Flight. This undermined Ms. Dale's authority and degraded her status as a senior manager.

11. Ms. Dale filed her formal complaint of discrimination on November 26, 2002, with the Defendant's Equal Employment Opportunity (EEO) Office. In her complaint, Ms. Dale alleges discrimination due to her disability (obesity). Ms. Dale complained that Lt Col Sykes treated Ms. Dale less favorably than other civil service employees of

the same level who were not overweight. While Ms. Dale did not claim she had a disability, she did claim that Sykes' **regarded** her as having a disability because of her size. At the time of the discriminatory treatment by Lt. Col. Sykes, Ms. Dale weighed over 300 pounds and was only 5 feet, 3 inches tall. Ms. Dale later supplemented her disability claim with a reprisal claim on March 18, 2003.

12. Ms. Dale had gastric bypass surgery in June of 2002. When Ms. Dale attempted to return to work following surgery, she learned that she had been placed under the supervision of Major Matthew Wilson.

13. When Ms. Dale first met Major Wilson, on or about January 13, 2003, Wilson barely acknowledged her presence and dismissed her until about an hour later. In that second meeting, Wilson also had Ms. Dale's secretary Janice Stephens, present. During that very short meeting, Wilson told Ms. Dale that she was not to make any personnel changes for 90 days and then dismissed her. Ms. Dale thought this cold and harsh treatment by Wilson was extremely unusual, as she had never met him, nor had she any prior dealings with him.

14. Additionally, Maj. Wilson dealt directly with Ms. Dale's subordinates, namely Lt. Stephanie Clayton and Mr. Paul Lewis. Wilson undermined Ms. Dale's authority, as a senior manager, when he went directly to her subordinates for information, rather than going to or through Ms. Dale.

15. Wilson also communicated to Ms. Dale through her subordinate, Lt. Clayton. Lt. Clayton thought it odd that Major Wilson would communicate something to her first, so she could communicate it to Ms. Dale.

4

16. Maj. Wilson would not allow Ms. Dale to discipline a subordinate, namely Ms. Pam Hutto. After Ms. Hutto spoke to Ms. Dale in a rude and disrespectful manner, Ms. Dale intended to discipline her for such insubordinate actions; however, Maj. Wilson would not allow her to do so. Wilson denied limiting Ms. Dale's ability to discipline her subordinates. When Ms. Dale reported the problem to Major Wilson, he told her not to punish Hutto and also told her that a real leader would "suck it up."

17. Wilson also told supervisors at a staff meeting that he would exercise approval authority over everything Ms. Dale did. He made no such comment about other activities under his supervision.

18. Ms. Dale was also excluded from financial meetings by Maj. Wilson, but her subordinate managers were required to attend the meetings. In this manner, Ms. Dale was excluded from meetings, during which important financial matters were discussed and yet she would be held accountable for these financial matters.

19. Ms. Dale had never met Maj. Wilson until he was moved into the position over her. Therefore, she cannot think of any other reason for Maj. Wilson's harsh actions toward her, except that he was retaliating against her for her filing an EEO complaint.

20. Ms. Dale became severely depressed at having to work in a hostile environment. She sought professional counseling services of a psychologist, who diagnosed anxiety secondary to thoughts of returning to the workplace.

21. Even though she was cleared by Dr. Snider to return to work, in May of 2003, Ms. Dale could not handle the harassment and continued retaliation she experienced when she attempted to return to work. She submitted a letter of resignation, citing

that she was forced to resign because of her supervisors' hostility and discrimination due to their perceptions of her disability.

22. Ms. Dale had a hearing with the Equal Employment Opportunity Commission, and has been given a right to file a civil action.  Ms. Dale has exhausted the Administrative Process and therefore she files this action with this Court.

23. The EEOC's Decision was received by Ms. Dale on September 12, 2005, stating she had 90 calendar days from receipt of the decision in which to file a civil action. Therefore, this Complaint is timely filed on December 12, 2005.

## COUNT I
## DISABILITY DISCRIMINATION

24. Plaintiff Dale repeats, re-alleges and incorporates by reference paragraphs 1-23 of this Complaint, as if fully stated herein, and further alleges the following:

25. The Rehabilitation Act of 1973, as amended, 29 U.S.C. §791 et. seq., proscribes disability discrimination in the federal sector.  Subsection (g) states that the standards used to determine whether this section has been violated in a complaint alleging non-affirmative action employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990.

26. The Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq,* states, as a general rule, no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and **other terms, conditions, and privileges** of employment.  42 U.S.C. §12112(a)

6

27. Lt. Col. Ann-Marie Sykes discriminated against and/or harassed Ms. Dale in regard to the terms, conditions and privileges of Ms. Dale's employment. Ms. Dale, who was over 300 pounds, and was only 5 feet, 3 inches tall, was treated less favorably than similarly situated employees who were not overweight.

28. Lt. Col. Sykes discriminatory and/or harassing treatment was based on Syke's perception of a disability by Ms. Dale. Lt. Col. Sykes treated people who were not overweight differently than she treated Ms. Dale.

29. Lt. Col. Sykes' actions showed she discriminated against and/or harassed Ms. Dale, in that Sykes regarded Dale as disabled due to her size and unable to perform the duties of her position when Sykes:

- told a group of co-workers she was sick and tired of GS employees sitting around fat, dumb and happy, while looking directly at Ms. Dale;
- regularly scolded Ms. Dale in business meetings;
- regularly bypassed Ms Dale by communicating directly with and tasking her subordinates with assignments, thereby undermining her authority;
- detailed Ms. Dale to the golf course kitchen, instead of allowing her to decide how to solve the financial problems therein;
- placed subordinate Paul Lewis in the position of general club manager without "discussing" it with the Ms. Dale, thus depriving her of a major portion of her authority and responsibilities;
- blocked Ms. Dale's requested transfer to Randolph Air Force Base by denying a swap with another employee;
- disapproved her request for a humanitarian transfer to the UK were

7

sufficiently severe and pervasive as to rise to the level of harassment; and

- referred to Ms. Dale as "incompetent," even though she was a clearly very capable business flight chief.

30. The actions taken against Ms. Dale, due to the perception of her disability, were pervasive and severe as to effect the terms and conditions of her employment.

31. Ms. Dale had previously enjoyed her work, and had excelled in her career as business flight chief. However, under Lt. Col. Sykes, Ms. Dale became physically ill at least three days a week. She became so ill, in fact, she had to seek the services of a psychologist. Ms. Dale was close to suicide and even had suicidal ideations. Fellow supervisors even observed changes in Ms. Dale after Lt. Col. Sykes became her senior supervisor. Obviously, the actions by Lt. Col. Sykes affected the terms and conditions of Ms. Dale's employment.

32. Any attempt by the Defendant to prove that its reasons for the taking the discriminatory actions against Ms. Dale will be shown to be pretextual.

## PRAYER FOR RELIEF

Wherefore, premises considered, the Plaintiff, Bridget Dale, respectfully prays that this Court grant the following relief:

a.   Declare that Defendant committed acts of disability discrimination against Plaintiff due to her supervisors' perceptions of a disability (size).

b.   A judgment requiring the Defendant to reimburse the Plaintiff the salary, sick and annual leave, and other work benefits she was wrongfully denied.

c.   Award of compensatory damages as may be just and proper under the circumstances of this case.

d.   Award of special damages for medical expenses.

e.   Award of attorney's fees.

8

   f.   Award of court costs and such other relief as this Court may deem just
        and proper.

## COUNT II
## RETALIATION

33. Plaintiff Dale re-alleges and incorporates by reference paragraphs 1-32 of this
    Complaint, as if fully stated herein, and further alleges the following:

34. According to 42 USC §12203(a), states that no person shall discriminate against any
    individual because such individual has opposed any act or practice made unlawful
    by this chapter or because such individual made a charge, testified, assisted, or
    participated in any manner in an investigation, proceeding, or hearing under this
    chapter.

35. Ms. Dale filed a formal complaint with the EEO Office at Maxell AFB, AL on
    November 26, 2002, alleging that she had been subjected to discrimination based
    on her supervisors' perception of a disability (size).

36. Subsequent to Ms. Dale's disability discrimination complaint, she was subjected to
    illegal reprisal by Lt. Col. Sykes and Major Matt Wilson.

37. Specifically, Lt. Col. Sykes denied Ms. Dale's transfer to another position at
    Randolph AFB, TX.  Lt. Col. Sykes said she "was not willing to replace one
    'incompetent' Business Operations Flight Chief with another one."  Sykes also went
    to Ms. Dale's subordinates rather than working through Ms. Dale, undermining her
    authority and degrading her status as a management employee.

38. As to retaliation by Major Matt Wilson:

   •   even though Major Wilson had never met her before, he immediately treated
       her very coldly and harshly.

9

- at the very first meeting Wilson admonished Ms. Dale, without any reason, that she could not make any personnel changes for 90 days.

- he communicated with Ms. Dale through her subordinates and dealt directly with Ms. Dale's subordinates, undermining her status and authority as a senior manager. Normal protocol would have been to use the chain of command and communicate to subordinates through Ms. Dale.

- he told Ms. Dale she could not discipline subordinate Pam Hutto, even though Hutto was rude to Ms. Dale on the phone. Wilson told Ms. Dale "a real leader could handle the situation, and suck it up."

- he also told supervisors at a staff meeting that he would exercise approval authority over everything Ms. Dale did, but made no such comment about other activities under his supervision.

- he excluded her from financial meetings, but required her managers to attend said meetings

39. Wilson showed further animus toward Ms. Dale when he said he couldn't wait to write Ms. Dale's appraisal, because he wanted to lower her ratings. Note: Wilson did not write the appraisal because Ms. Dale left her employment before he had the chance to do so.

40. Further, Wilson also posted a sign in his office that provided, "Sarcasm, intimidation, and fear are all acceptable leadership traits." Maj. Wilson told another employee he had created the sign for Ms. Dale.

41. Finally, after a meeting, at which suicide prevention was discussed, Ms. Dale left the meeting, obviously distraught. Rather than attempting to determine why Ms. Dale

was upset, Major Wilson showed total lack of compassion for Ms. Dale, when he commented to another supervisor, "I guess she'll be out another ten months," or words to that effect.

42. Ms. Dale's supervisors, namely Major Matt Wilson, Ms. Kathy Guiterrez and Lt. Col. Ann-Marie Sykes were aware of Ms. Dale's EEO disability complaint prior to the retaliatory actions against Ms. Dale.

43. Maj. Wilson's actions and attitude toward Ms. Dale were unexplainable, absent retaliation. Ms. Dale had not known Maj. Wilson until he was moved into the position over her. She had never worked with Wilson, or for him. The only possible reason Ms. Dale can reasonably perceive for Wilson's actions toward her is retaliation for her EEO complaint.

44. The retaliation was sufficiently severe or pervasive to alter the terms and conditions of Ms. Dale's employment. The harassment and retaliation Ms. Dale suffered became more than she could bear. She sought professional counseling services in an attempt to continue her employment. When she attempted to return to work, after an extended period of leave, her working conditions did not improve. In fact, her working environment became more hostile as Maj. Wilson continued to undermine her authority. She felt she had no choice but to resign her position with the Defendant.

45. Thus, Ms. Dale has suffered the loss of her position with the Defendant, due to her constructive discharge a mere 18 months before she could have retired. She has also suffered lost income and benefits from her loss of employment. Ms. Dale as also suffered extreme mental and emotional damages.

46. Any attempt by the Defendant to prove that its reasons for the taking the retaliatory

11

actions against Ms. Dale will be shown to be pretextual.

## PRAYER FOR RELIEF

Wherefore, premises considered, the Plaintiff, Bridget Dale, respectfully prays

that this Court grant the following relief:

a. Declare that Defendant committed acts of retaliation against Plaintiff due to her complaint of discrimination.

b. A judgment requiring the Defendant to reimburse the Plaintiff the salary, sick and annual leave, and other work benefits he was wrongfully denied.

c. Award of compensatory damages as may be just and proper under the circumstances of this case.

d. Award of special damages for medical expenses.

e. Award of attorney fees.

g. Award of court costs and such other relief as this Court may deem just and proper.

Respectfully submitted this the 12th day of December, 2005.

JOSEPH C. GUILLOT (GUI011)
Attorney for Plaintiff Bridget Dale

OF COUNSEL:
McPHILLIPS SHINBAUM, L.L.P.
516 South Perry Street
Montgomery, Alabama 36104
(334) 262-1911
(334) 262-2321 FAX

## JURY TRIAL REQUESTED

Plaintiff requests a jury trial on issues so triable.

OF COUNSEL

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of the foregoing Complaint, via United States Mail, postage prepaid, on this the 12th day of December, 2005, to the following:

Honorable Leura Garrett Canary
United States Attorney
201 One Court Square
Montgomery Alabama 36104

Honorable Alberto Gonzales
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue
Washington D. C. 20530-0001

Honorable Michael W. Wynne
Secretary of the Air Force
1670 Air Force Pentagon
Washington D.C. 20330-1670

OF COUNSEL