# EXHIBIT 8



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

Bridget E. Dale,
Complainant,

v.

Michael L. Dominguez,
Acting Secretary,
Department of the Air Force,
Agency.

Appeal No. 01A44907

Agency No. MGOJ02018

Hearing No. 130-2004-00032X

DECISION

Complainant timely initiated an appeal from the agency's final order concerning her equal employment opportunity (EEO) complaint of unlawful employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 *et seq*. The appeal is accepted pursuant to 29 C.F.R. § 1614.405. For the following reasons, the Commission AFFIRMS the agency's final order.

The record reveals that complainant, a GS-12 Chief of Business Operations Flight in the Services Division at the agency's Maxwell Air Force Base, Texas ("facility"), filed a formal EEO complaint on November 26, 2002, alleging that the agency discriminated against her on the basis of disability (obesity) when she was subjected to a hostile work environment by the facility's Lieutenant Colonel (LC), her third-level Supervisor, between June of 2002 and June 13, 2003. Complainant also alleged that she was discriminated against on the basis of reprisal for prior EEO activity by her first-level Supervisor (S1), beginning in January of 2003.

The record reflects that complainant was employed by the agency for about 29 years, and her last position at the facility was as Chief of Business Operations Flight, from June of 2000 until her resignation on June 13, 2003. The Business Operations Flight consisted of two (2) Enlisted Clubs, the Officer's Club and other recreational facilities, and complainant's position involved managing the business operations of these facilities. The record reflects that complainant received performance and cash awards from 1995 to June of 2002, with ratings of Fully Successful or better. Complainant alleged that prior to June of 2002, she weighed over 300 pounds, and her weight varied at times from thirty to forty pounds. She testified that her weight did not impact

01315

09/20/2005 TUE 10:43 FAX AFC    240-857-5111                                    ☒003/008

2                                       01A44907

her ability to perform any aspect of her duties, or her ability to do any activities outside of work. We note that complainant has not alleged that she is an individual with a disability as that term is defined by the Rehabilitation Act. However, complainant alleged that she was regarded by the LC as being disabled, due to her obesity. Complainant stated that she had gastric bypass surgery due to the manner in which the LC treated her. However, the LC stated that prior to complainant's having the surgery, she stated that her physician recommended the surgery as she would live only ten (10) years if she did not lose weight. The LC testified that she believed complainant to be thirty (30) to fifty (50) pounds overweight, but she did not believe that complainant's ability was in any way impaired or disabled.

The record further indicates that in June of 2002, the LC entered a business meeting and stated that she was tired of the GS employees at the facility "sitting around fat, dumb and happy." Complainant and at least two (2) other witnesses stated that the LC looked directly at complainant when she said this. The LC conceded she made this remark, but testified that she made the comment to explain to her subordinates that they should not be complacent, but the statement was in no way directed at complainant. Complainant further testified that during staff meetings, the LC talked to her in a derogatory manner and scolded her in virtually every meeting. However, the LC stated that her problem with complainant was that she was not as business oriented as her position required her to be. Witnesses who worked at the facility stated that while the LC was abrasive toward complainant, she was also abrasive with other facility employees. The LC also testified that while she prevented complainant from being transferred to a position at Randolph Air Force Base in an employee "swap," she did so as the employee who would be taking complainant's spot was unacceptable. The LC further testified that she did not prevent complainant's transfer to England. Complainant also stated that she had a meeting with S1 on June 13, 2003 and was told not to make any personnel changes for ninety days, but S1 stated that he did not know of complainant's prior EEO activity at the time of the meeting at issue. Complainant alleged that S1 interfered with her work and prevented her from disciplining employees who were under complainant's authority. S1 conceded that he made comments regarding complainant's use of leave in front of other facility employees. There is evidence in the record establishing that after the LC became her third-level supervisor, there was a gradual change in her behavior and emotional state, to the point where she was sick several days per week and had thoughts of suicide.

Believing she was the victim of discrimination, complainant sought EEO Counseling and filed the aforementioned formal complaint. At the conclusion of the investigation, complainant received a copy of the investigative report and requested a hearing before an EEOC Administrative Judge (AJ). Following a hearing, the AJ issued a decision finding no discrimination.

The AJ concluded that complainant failed to establish a *prima facie* case of disability discrimination. Specifically, the AJ noted that complainant alleged that she was regarded by the agency as having a disability. However, the AJ found that the agency's mere awareness of complainant's obesity would not be a sufficient basis to support a finding that the agency regarded her as being disabled under the Rehabilitation Act. While complainant alleged that the LC

01316

referred to her as "fat, dumb and happy," in a staff meeting, the AJ noted that the LC denied this and stated that she did not regard complainant as being unable to perform any major life activities associated with her job or outside of work. As such, the AJ found that complainant failed to establish that the LC regarded her as being substantially limited in any major life activities. In addition, the AJ found that complainant failed to demonstrate that the conduct of the LC was based on complainant's perceived disability. Finally, the AJ found that complainant failed to establish that the conduct of the LC was sufficiently severe and pervasive to establish harassment due to a hostile work environment. In so finding, the AJ noted that complainant's allegations were insufficient to rise to the level of unreasonably interfering with her work environment such that it became hostile. The AJ further found that complainant failed to establish that S1 retaliated against her for prior EEO activity. In so finding, the AJ noted that S1 found out about complainant's prior EEO activity in late January of 2003, and thus he could not have known about it at the meeting referred to by complainant on July 13, 2003. In addition, the AJ found that complainant failed to establish that the conduct of S1 toward her rose to the level of harassment due to a hostile work environment. The AJ concluded that a reasonable person in complainant's circumstances would not have found S1's behavior to interfere with her work environment. The agency's final order implemented the AJ's decision. On appeal, complainant restates arguments previously made at the hearing. In response, the agency restates the position it took in its FAD, and requests that we affirm its final order.

Pursuant to 29 C.F.R. § 1614.405(a), all post-hearing factual findings by an AJ will be upheld if supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477 (1951) (citation omitted). A finding regarding whether or not discriminatory intent existed is a factual finding. *See Pullman-Standard Co. v. Swint*, 456 U.S. 273, 293 (1982). An AJ's conclusions of law are subject to a *de novo* standard of review, whether or not a hearing was held.

The Commission initially finds that even assuming, *arguendo*, that complainant was an individual with a disability as that term is defined by the Rehabilitation Act, she failed to establish that she was subjected to a hostile work environment due to her obesity.[1] Complainant also claims that

---

[1] In this decision, the Commission makes no finding on whether complainant was regarded as disabled by the LC due to her weight. However, we note that a complainant can be regarded as disabled if an impairment is perceived as substantially limiting the performance of a major life activity, or if she has no impairment but is perceived as having an impairment which substantially limits a major life activity. *See* 29 C.F.R. § 1630.2(1). In the instant case, complainant claimed that she was perceived as disabled because the LC was aware of her weight and she treated her differently than other employees as a result. We note that the mere awareness of a complainant's weight is not sufficient basis to support a finding that the agency regarded her as having a disability. *See Lester v. Dept. of Justice*, EEOC Appeal No. 01A01812 (August 8, 2002); *Ervin v. Department of Justice*, EEOC Appeal No. 01985590 (September 14, 2001).

4                                                                    01A44907

she was subjected to harassment on the basis of perceived disability when the LC: (1) made the "fat, dumb and happy" comment in her presence; (2) scolded her in a business meeting; (3) detailed her to the golf course kitchen to determine why the kitchen was losing money; (4) blocked her transfer to Randolph Air Force Base; and (5) disapproved her request for a transfer to England. In order to establish a claim of hostile environment harassment, a complainant must show: (1) she is a member of a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on the statutorily protected class; and (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment. *See Soto v. U.S. Postal Service*, EEOC Appeal No. 01994396 (March 14, 2002).

To determine whether complainant has set forth an actionable claim of harassment, the conduct at issue must be viewed in the context of the totality of the circumstances, considering the nature and frequency of offensive encounters and the span of time over which the encounters occurred. *See Cobb v. Department of the Treasury*, Request No. 05970077 (March 13, 1997). The Supreme Court emphasized in *Faragher v. City of Boca Raton*, that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" 524 U.S. 775, 788 (1998). The Court noted that such conduct must be both objectively and subjectively offensive, such that a reasonable person would find it to be hostile or abusive, and that the victim perceived the environment to be hostile and abusive. *Id.* at 787. After a review of the record, the Commission concurs with the AJ's finding that the record does not support that the alleged incidents of harassment actually occurred or that the conduct complained of herein was sufficiently severe or pervasive to have altered complainant's employment and created an abusive working environment. In so finding, we note the AJ's conclusion that in addressing most of complainant's allegations of harassment, the agency asserted and explained the reasons these actions were taken. AJ's Decision at 585. In addition, we note that regarding the comment directed at "fat, dumb and happy" GS employees, the LC testified at the hearing that she did not intend that comment to be directed at complainant. Further, there is ample testimony in the record that the LC admonished many employees at the facility, and that complainant was not treated differently or singled out for abusive treatment by the LC. AJ's Decision at 554-556. We further concur with the AJ's finding that the actions of S1 beginning in January of 2003 were not sufficiently severe or pervasive to have altered complainant's employment and created an abusive working environment.[2]

---

[2] The Commission further concurs with the AJ's finding that complainant established a *prima facie* case of retaliation based on her prior EEO activity. As found by the AJ, there is no evidence in the record that S1 was aware of complainant's prior EEO activity until late January of 2003, and thus his direction in the meeting on January 13, 2003 that complainant not make any changes in personnel could not have been based on retaliation for her prior EEO activity. We further find that complainant has failed to proffer any evidence that the other alleged actions of S1, such as not communicating with her except through e-mail, preventing her from disciplining

5                                                                01A44907

After a careful review of the record, the Commission finds that the AJ's findings of fact are supported by substantial evidence in the record and that the AJ's decision properly summarized the relevant facts and referenced the appropriate regulations, policies, and laws. We note that complainant failed to proffer evidence that any of the agency's actions were in retaliation for complainant's prior EEO activity or were sufficient severe and pervasive to create a hostile work environment. We thus discern no basis to disturb the AJ's decision. Therefore, after a careful review of the record, including complainant's contentions on appeal, the agency's response, and arguments and evidence not specifically addressed in this decision, we affirm the agency's final order.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.  The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.  The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

---

an employee and commenting on her use of leave, were due to retaliation for her prior EEO activity.

01319

6                                                                01A44907

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*[signature]*

Carlton M. Hadden, Director
Office of Federal Operations

AUG 3 1 2005

Date

7        01A44907

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:

AUG 3 1 2005
Date

*H. Wood* (signature)
Equal Opportunity Assistant