# PLAINTIFF'S

# EXHIBIT

# 1



# DECLARATION UNDER PENALTY OF PERJURY

I, Bridget Dale, in accordance with 28 U.S.C. Section 1746, make the following statement:

*EFFECTS OF NONDISCLOSURE: Disclosure of information by me is voluntary; however, my failure to respond will result in disposition of the case on the basis of information available.*

*AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended: Executive Order 10577; and 29 CRF 1614.*

*PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.*

1. Is your name Bridget Dale? **Yes it is.**

2. What is your current position and approximately how long have you worked in that position?
**I am Chief of Business Operations Flight, Services Division, Mission Support Group, 42 ABW, Maxwell, AFB. I have worked as the Chief of Business Operations for approximately thirteen years and with the Air Force 29 years. I have been in the position at Maxwell since June 2000. Prior to that, I was the Chief of Business Operations at Kelly AFB in San Antonio.**

3. Who is Major Marian Scavelli, and what is the relationship of her position to your position?
**Major Scavelli became the Deputy Chief of Services Division in February 2002. As such, she was my first level supervisor. She remained my first level supervisor until I left work on sick leave in June 2002.**

4. Who was your first level supervisor prior to Major Scavelli, and how long was that individual your supervisor?
**Prior to Major Scavelli, my first level supervisor was Ervin Cox. Mr. Cox was there when I arrived in June 2000.**

5. Who is Kathy Gutierrez, and what is the relationship of her position to your position?
**Kathy Gutierrez is the Chief of Services Division. She has been my second level supervisor since I arrived at Maxwell.**

6. What is the relationship between the position held by LtCol Anne-Marie Sykes and your position?
**LtCol Sykes was the Deputy Commander, 42 ABW Mission Support Group. As such, she was my third level supervisor. She came into that job around May or June 2001.**

7. The case file indicated that you were on extended sick leave from June 11, 2002, until December 1, 2002. Is that correct?
**Yes, that is correct. At that time, I underwent gastric bypass operation. I did that in order to gain acceptance by LtCol Sykes since it was obvious to me that she disliked me because of my weight condition. I lost approximately 100 pounds prior to returning to work on January 13, 2003. Since that time, I have lost approximately another 40 pounds.**

8. The case file indicated that you were in and out of work from April 2002 until you took sick leave in mid-June 2002. Is that true, and if so, how often were you out of work during that period?
**Yes, it is true that I was out of work approximately one-half of the time from April to June 2002. My elderly father lives in England and he was having health problems. I took leave to visit with him and help him. In addition, I underwent a gall bladder operation during that period of time.**

9. Now, I need to discuss your disability. You have alleged that your disability is Obesity, and you have alleged that LtCol Sykes harassed you because of your obesity. With regard to your obesity, I need for you to tell me your height and weight at the time that LtCol Sykes became your third-level supervisor.
**I was 5'3" and I weighed about 305 pounds.**

10. Did you maintain that same weight from June 2001 until you went on sick leave in June 2002?
**My weight may have varied by 30-40 pounds at different points in time.**

11. Did your weight condition impact on your ability to perform any aspect of your job?
**No, it did not.**

12. Did your weight condition impact on your ability to any specific things outside of work?
**No, it did not. I had been heavy my entire life and I could do the same things as other person who are not heavy could do.**

13. Do you have any evidence that would indicate that LtCol Sykes thought that your weight impacted upon your ability to do your job or impacted upon your ability to do anything outside of work?
**Shortly before I went on sick leave for the gastric bypass operation, I was in a meeting with approximately twenty other individuals. LtCol Sykes came into the meeting, she looked directly at me, and she said that she was sick and tired of the GS (government service) employees sitting around fat, dumb and happy. Since she was looking directly at me, it was obvious that she meant the statement for me. At that time, I was a happy heavy person, and I believe her statement indicated that she has stereotyped happy heavy people**

**as "dumb" people. Therefore, I believe it was her perception that I because I was a heavy person I was unintelligent and incapable of handling my job.**

14. Did LtCol Sykes say anything else about your weight or anyone else's weight?

**Yes, she basically treated heavy individuals in a negative manner. Major Scavelli was overweight by about 15-20 pounds, and LtCol Sykes hounded her all of the time about weighing herself and her weight. Debbie Arsenault who was over one of the Enlisted Clubs was about my height and she weighted about 250 pounds. LtCol Sykes acted as if she totally disliked Ms. Arsenault. I know that Debbie was rather straight forward when she addressed issues and she would tell you the way things are without mincing words. I believe a combination of her straightforwardness and her weight caused LtCol Sykes not to want her to be the Club Manager. Additionally, Ms. Barbara Holt was a Bowling Center Manager. She is also about my height and she weighted about 250 pounds. LtCol Sykes made comments and used a negative tone, which indicated that she did not like Ms. Holt. To me, LtCol Sykes' attitude toward so many overweight individuals indicated that she was biased against heavy people.**

15. How many other Flight Chiefs work for LtCol Sykes besides yourself and how many of those Flight Chiefs are overweight?

**There are five other Flight Chiefs working for her. None of the other Flight Chiefs are overweight.**

16. The record shows that you alleged that in October 2001 LtCol Sykes prevented you from receiving the Senior Manager of the Year award. Can you tell me who submitted the request to give you that award, and how did you find out that LtCol Sykes prevented you from receiving the award, and what does this have to do with your weight?

**Major Scavelli told me that she was going to submit the request for the award, but she decided that it would not be a good idea to submit it because she knew that LtCol Sykes would not approve the request because she did not like me.**

17. Since LtCol Sykes took over as your third-level supervisor in June 2001 and this incident took place around October 2001, can you think of any other incidents that took place during this period of time, which would establish that you were harassed because of your weight?

**Yes, there were constant instances where LtCol Sykes would chastise me or scold me in meetings. We had a weekly staff meeting (called a Stand-Up meeting). As the Chief of Operations Services I was over the most visible organizations that dealt with the public because I was over the Officer's Club, two Enlisted Men's clubs, the bowling center, the stables and the golf course. So, if someone's food was cold, or the grass on the golf course was took long or too anything, some one would complain. Every meeting that we had, LtCol Sykes talked to me in a derogatory manner about whatever problem was brought to her attention that week. I believe this was related to my weight because LtCol Sykes may have scolded others in the meetings on a periodic basis; whereas, she scolded me about something in essentially every meeting.**

**Additionally, LtCol Sykes treated me as a non-manager. Even though I was over all of the Club systems if LtCol Sykes had any questions about the club systems she would go**

**directly to my subordinates to get answers. Also, occasionally, she would task the subordinate manager to provide her with a report of their activities. Then, if she found a problem with the report that she asked for, and that I had never seen, she would hold me accountable for getting the report correct. For example, during Easter in 2002, Paul Lewis turned in a report that was completely wrong. LtCol Sykes had Major Scavelli and me working on that report on Easter to get it corrected. We worked about twelve hours on that report. I have seven subordinate managers working for me and it was not unusual for LtCol Sykes to go directly to any of them. She did this all of the time.**

18. In the letter of acceptance the agency indicated that the next incident that took place near the end of March 2002 when LtCol Sykes detailed you to work in the kitchen area at the Maxwell Golf Course. LtCol Sykes indicated in the case file that you had problems with the Pro Shop losing money and you spent some time in the Pro shop and discovered what the problem was. She indicated that she suggested that you spend a few days at the kitchen in order to determine why it was losing money. Is this March incident the next incident, can you explain what happened, and explain why it is evidence of discrimination against you because of your obesity?

**Other than the fact that LtCol Sykes continuously went directly to my subordinates and continuously chastised me in meetings, the next incident was that March 2002 event. LtCol Sykes was correct when she indicated that I decided as a manager to spend some time in the Pro Shop to discover why it was losing money. I stayed down there about one week and corrected the problem. Additionally, had I determined it to be necessary for me to spend a week or a few days in the kitchen to discover why it was losing money I would have done that. This was different. This was a situation where LtCol Sykes directed me to go to the kitchen until the problem was corrected. It was a humiliating experience to be directed as the manager to stay in the kitchen area. I believe Major Scavelli was in the meeting when I was directed to go to the kitchen. I believe this was further evidence of discrimination because of my weight because of the comment made by LtCol Sykes about fat, dumb and happy; because of her negative attitude towards those persons mentioned above who are heavy persons; and because I believe she wanted me out of my job so that she could replace me with Paul Lewis, and she thought by humiliating me I would leave.**

19. The next incident concerns your contention that your performance evaluation, which was due in April 2002, was downgraded by LtCol Sykes. In that regard, Major Scavelli, the rating official indicated that LtCol Sykes had nothing to do with your performance evaluation. Can you explain what happen and why you believe it was LtCol Sykes that discriminated against you because of your weight?

**I recall that months after my performance appraisal was due I asked Major Scavelli when I was going to receive the appraisal. She told me that she was afraid to give me the rating because she thought it would make me totally upset. She then explained that she had rated me with all 9's, just like I had always received, but when she forwarded the rating to Kathy Gutierrez, Kathy told her to take it back and drop some of the ratings. Kathy told her that LtCol Sykes would never approve the rating with all nines. This incident demonstrates that LtCol Sykes has communicated to her subordinates that she does not like me even though my performance has not changed over time.**

20. One of the allegations is that are April 1, 2002, you were informally removed and/or that your authority over the clubs was taken away. Also, there is information in the file that seems to indicate that Mr. Paul Lewis was designated as the Director of Club Operations and/or General Manager of the Clubs and that meant that he was the supervisor over all of those clubs. Are these the events you are talking about when you allege you were informally removed or that your authority was taken away? Secondly, can you explain what happened and indicate your prior involvement in discussions or decisions about creating the Director of Club Operations or General Manager position.

**All of those events are one in the same. Since Paul Lewis was designated as the General Manager of the Clubs or as the Director of Club Operations that took away my supervisory authority. Now, all of the managers in those operations report directly to Paul Lewis. Also, while Paul Lewis technically should be reporting to me, he bypasses me and reports directly to LtCol Sykes and she deals directly with him and ignores me when it comes to club business.**

**What happened was that one day I was called into a meeting and I was told that Paul Lewis was assigned to that position. There was no pre-discussion about creating the position and no discussion about placing Mr. Lewis into any type of job like that. This was just another ways for LtCol Sykes to take away my authority and work towards getting Paul Lewis into my job.**

**Also, I want to mention that I was partially responsible for hiring Paul Lewis in March 2001. At that time we were doing some market research to find out how the local businesses operated. Paul Lewis worked at a Barnhill's cafeteria making about $35,000 per year. I provided him an application and he applied for the Officer Club Manager position without any prior experience. A panel recommended that he get hired, and I recommended that we pay him about $42,000 per year. I thought that was a good increase in pay. However, Col Carr, the Commander, 42 AWB decided to pay him $65,000 per year.**

**Mr. Lewis is a good talker and BS'er. However, he is still new to the club system and at times he needed to be corrected because he had not learned all of the rules and regulations. When I would correct him, he would whine to LtCol Sykes. I think he not only whined but he saw a chance to get in good with LtCol Sykes and turn her against me so that he could get my job. As a matter of fact, it seems like he and LtCol Sykes have a rather close relationship. For example, once in a meeting with over twenty people in attendance Mr. Lewis came in late and when he came in he said good morning Colonel Darling. I found that comment totally inappropriate; however, Colonel Sykes did not seem to mind, and no action was taken by her.**

21. The file indicated that around June 10 or 11, 2002, right before you went on sick leave for your gastric bypass operation, LtCol Sykes held a meeting with some of your staff members without you. I believe this meeting concerned the reinstatement of an employee. Can you address the significant of this?

**LtCol Sykes sent e-mails to Paul Lewis, a Ms. Langford, and the resource management office (Norman Logan) that there was a meeting about a forced placement of someone who won an EEO complaint. I knew nothing about the meeting. Ms. Logan called me and asked me whether I was going to be present for the meeting. That was how I found out about the meeting. This was the straw that broke the camel's back. I had been ignored, gone around, humiliated in public, and now individuals were being placed into positions without my knowledge.**

22. In your complaint you also indicated that LtCol Sykes prevented you from getting a transfer to Randolph AFB. Can you explain what happened there and why that is evidence of harassment?
**This is an ongoing situation. However, it began approximately one and one-half years ago when an individual at Randolph AFB Headquarters level indicated a willingness to take my job here at base level, and management at Randolph AFB Headquarters indicated a willingness to accept me in that person's job as a job swap. However, LtCol Sykes made some phone calls about the individual at Randolph and then she decided that she did not want that person coming here and she disapproved the swap. This is an ongoing situation because management at Randolph and the person at Randolph are still willing to make the swap, and LtCol Sykes will not allow it.**

**I do not understand why LtCol Sykes is doing this to me. She is taking actions to go around me, give away part of my job to Paul Lewis and chastise me, but at the same time she will not allow me to leave the job and go somewhere else.**

23. In your complaint you indicated that LtCol Sykes disapproved or stopped you from getting a transfer to England. Can you explain what LtCol Sykes did and explain how this is part of the harassment?
**As I mentioned earlier my father is in poor health with a heart condition. He is 83 and he lives in England. I have previously been stationed in England. I requested a humanitarian reassignment back to England. It is my opinion that my request would or should have already been honored, and the only reason for it not to be honored would have been because LtCol Sykes has stopped the transfer.**

24. Those are all of the questions I have regarding your claim of harassment by LtCol Sykes based on your weight. Are there other incidents, and if so, can you tell me when they took place, what happened, and why they are evidence of harassment because of your weight?
**I think that we have covered the incidents.**

25. After filing your initial complaint, you amended your complaint by indicating that you thought you were being subjected to harassment based on reprisal by Major Matthew Wilson because of several incidents. Prior to discussing those incidents can you explain who Major Wilson is, and explain his relationship to you and your position?
**Prior to going on sick leave in June 2002, Major Scavelli was the Deputy of Services Division, and as such was my first level supervisor. During the period of time I was on sick leave, Major Scavelli received an assigned in another area, and Major Wilson, who was an activated reservist, replaced her as the Deputy of Service Division. Thus, during my**

**absence he became my first level supervisor. I will add that Major Wilson had absolutely no experience or knowledge of the services function.**

26. The record indicated that the first incident of harassment concerned a meeting that took place in January 2003 in which you were told something about personnel changes. Can you indicate what took place and explain why it was caused by reprisal?

**Yes, I can. I returned to duty on January 13, 2003. [I want to note that I did try to return to duty in August 2002; however, Kathy Gutierrez told me that since my doctor said I was to return to work on September 3, 2002, that I should not return to work until that time.] Anyway, when I returned to work in January, I went to Major Wilson's office and walked in to introduce myself. Without even looking up or saying good morning or anything, he just said: "I'll talk to you later". I left his office a little taken back by his attitude, but I did not say anything. About two hours later, Major Wilson sent my secretary to tell me that he wanted to see us in his office. When we arrived, I put my hand out and introduced myself. Major Wilson did not even look up. He just said: "Take a seat". He then directed the secretary to stay and to take notes of the meeting. Then, without even looking at me, he basically laid down the rules: There are to be no personnel changes and no other changes. Then, I was dismissed. This is such a strange manner for a senior manager to be introduced to her immediate supervisor. I did not know Major Wilson and he did not know me. I had been a good manager who had received excellent performance ratings. The only thing I had done is take six months sick leave and file an EEO complaint. I doubt that he held my sick leave against me. The only explanation for his strange attitude, his demeanor, him wanting my secretary to take notes, etc., would be my EEO complaint against his boss.**

27. Who is your secretary, and did she actually take notes and provide them to you?

**My secretary is Janice Stephen. She now works in HRO. Her phone number is 334-953-3669. Yes, she did take notes. No, she did not provide them to me. I believe she provided them to Major Wilson.**

28. You indicated Major Wilson did not communicate with you after that meeting except through a Lt Stephanie Clayton. Can you explain what happened and why it is a form of reprisal?

**I cannot say that Major Wilson did not communicate with me. What I can say is that he did not meet with me or talk to me. Rather, he would send me e-mails. This went on for approximately a month after I came back to work. Then, at about that point in time, a new Lieutenant (Stephanie Clayton) was assigned to work for me. From that point forward, if Major Wilson had any messages for me, he would talk with Lt. Clayton, and I had respond back through Lt. Clayton. This is very humiliating to have a senior manager having to use a subordinate lieutenant to communicate with upper management. Since I had never done anything negative towards Major Wilson, the only explanation for his actions is my EEO complaint. It appeared he was going out of his way to make me want to quit my job. I believe he wanted me to quit so that Paul Lewis could get my job.**

29. You have also alleged that Major Wilson communicated directly with Paul Lewis. Can you explain why this is caused by reprisal?

**As I indicated above, I have never done anything to Major Wilson. I am the senior manager, and Paul Lewis is a subordinate manager working for me. Major Wilson has saw fit to deal directly with Paul Lewis, while at the same time, ignoring me and only communicating with me through a lieutenant. If I had some prior run-in with Major Wilson or some prior problem with Major Wilson I would understand his demeanor, but I had never met Major Wilson before I returned to work in January 2003. His total demeanor towards me, and his different treatment of others shows that he is upset with me about something. The only thing that could account for such difference in treatment and such a negative attitude is the fact that I had filed a prior EEO complaint.**

30. You indicated that in mid-March 2003, Major Wilson stopped you from disciplining one of your subordinates. Can you explain what took place?

**We have a weekly meeting on Tuesdays to brief the Group Commander about the finances. On Monday, prior to the meeting, I called Ms. Pam Hutto at the Bowling Center at Gunter and reminded her of the meeting. Ms. Hutto told me that she could not make the meeting because she was interviewing some candidates for a job. I asked her when her interviews started and she said at nine o'clock. I told her that the meeting started at 0800, and I would inform the group that she needed to go first so she could leave early. She said okay. Then, the next day she did not come to the meeting. After the meeting, I called her to find out what was going on since I had just talked to her the day before. She told me that someone else told her the meeting was at a different time, and so, she did not go because of the interviews. I informed her that if she had any confusion about the time of the meeting she should have called me since I had just talked to her about that meeting. She got upset, became rude and disrespectful. She screamed what are you going to do, write me up? Then, she slammed the receiver down on the phone. At that point she must have called Major Wilson because he called me to talk to me to about the incident. He commented that there was a misunderstanding and that I should not be taking disciplinary action against Ms. Hutto. I told him that I was not going to take any disciplinary action for not coming to the meeting, but I was going to counsel her about her disrespectful behavior. At that point, Major Wilson told me that I was not to discipline her at all.**

31. In the amended complaint you also indicated that you were written up for miniscule reasons, and indicated that Major Wilson made comments about your upcoming appraisal. Can you address those aspects of the reprisal harassment complaint?

**In order to explain the situation, I need to discuss another person – Ms. Deborah Root. Ms. Root is also a Flight Chief and a Counselor. I have known her for long time, even prior to her getting her job. I went to her to talk to her about my situation with Major Wilson just to get some reassurance that I was not crazy. I told her about the situation and asked her if I was just being paranoid. She told me that she had observed things and she did not think I was crazy. As a matter of fact, she said that she was going to call Linda Long in the EEO office to tell her that I was not being treated properly. She told me that she had heard things that would hurt my feelings and she did not want to talk to me about them. She did tell me that after I came back to work she overheard Major Wilson make a comment in a negative manner that he could not wait to give me my appraisal. Since I had only come back to work in mid-January 2003, and my appraisal was due in March 2003, there would**

**have been no reason for him to have made such a comment in a negative manner except that he wanted to take reprisal action against me on my performance evaluation.**

32. Did Major Wilson give you an appraisal, what was it, and is there any other information you need to communicate regarding the reprisal?

**Even though my appraisal should have been given in March or April 2003, I still do not have one. Yes, there is one other incident. At one point in time, Major Wilson attended one of my staff meetings. He sat there taking notes as if he was observing me. That observation made no sense since I am not a new supervisor who needed to be observed. The only conclusion I drew from that experience was that he was looking for something negative to document about me.**

33. You have asked me about adding information about the relief you want and the types of damages you are seeking. As a general rule, OCI does not investigate damages. If you wish to add evidence related to damages you can do so at this point, or you can add that information later if a finding of discrimination is made by the agency and/or if you pursue this claim with EEOC. Please indicate that you will add compensatory damages information at this point, or if you wish to wait until later to add that information.

**Placement in another job, in San Antonio Texas, or early retirement. Reimbursement of sick and annual leave used because they wouldn't let me return to work. Attorney fees. Compensatory damages for emotional distress and mental anguish.**

I, Bridget Dale, state under penalty of perjury that the foregoing is true and correct.

[signature] 6/18/03
Declarant

[signature]
(Witness' Signature)

6-18-03
(Date)

JANNELL BULLOCK
Notary Public, State of Texas
My Commission Expires
November 14, 2006

# PLAINTIFF'S

# EXHIBIT

# 2

BRIDGET DALE
1944 Kingsbury Drive
Montgomery, Alabama 36106

May 30, 2003

Department of the Air Force
42 ABW/CC
50 LeMay Plaza South, Bldg. 804
Maxwell AFB, AL 36112-6334

TO WHOM IT MAY CONCERN:

This letter is to advise you that I am being forced to resign my employment position effective July 14, 2003, because my work environment is not conducive to performing my job functions effectively. The hostility and discrimination I have been experiencing, which are due to my employers' perceptions of my disability, as well as their circumventing my supervisory role with my subordinates, make it impossible for me to continue my employment with the 42nd Mission Support Group.

Even though I am asking to resign effective July 14, 2003, I request that I be placed in leave without pay status for 30 days, beginning June 14, 2003. My request for this additional time is to afford me continued medical benefits during the time I will be relocating with my husband and searching for new employment. Considering my outstanding employment record, I believe the Air Force can afford to make this concession for me.

It was a pleasure to serve the Air Force for twenty seven years, before the latest circumstances forced me to resign my position.

Sincerely,

Bridget Dale

# PLAINTIFF'S

# EXHIBIT

# 3

Z20479ZMG0JFFCB SVB

PERSONAL DATA - PRIVACY ACT OF 1974

AS OF: 05 SEP 2002

**AWARDS DATA . . .**

| TYPE | AMOUNT | DATE APPRVD |
|---|---|---|
| Performance Award | 1798 | 01-JUN-2002 |
| Notable Achievement Award | 250 | 27-DEC-2001 |
| Performance Award | 2025 | 01-JUN-2001 |
| Performance Award | 507 | 01-JUN-2000 |
| Performance Award | 607 | 01-JUN-1999 |
| Time Off Award | 8 | 18-MAY-1999 |
| Performance Award | 256 | 01-JUN-1998 |
| Performance Award | 243 | 01-JUN-1997 |
| Performance Award | 356 | 01-SEP-1996 |
| Performance Award | 452 | 01-SEP-1995 |

EPORT NAME:RP602 PAGE NUM 3

CXI

# PLAINTIFF'S

# EXHIBIT

# 4

Z20479ZMG0JFFCB SVB

PERSONAL DATA - PRIVACY ACT OF 1974

AS OF: 05 SEP 2002

PRIORITY PLACEMENT DATA

| DATE BEGAN | DATE END | REASON | SPECIAL PP | SPECIAL GR | PP-1 | GR-1 | ACCEPTABLE PP-2 | ACCEPTABLE GR-2 | PP-3 | GR-3 | PP-4 | GR-4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

EDUCATION DATA . . .

| LVL | TYP | YEAR | INSTRUCTIONAL PROGRAM |
|---|---|---|---|

APPRAISAL DATA . . .

| TYPE | RATING | FACTORS | DATE |
|---|---|---|---|
| A | 3-Acceptable, Ful | 998988999 | 01-JUN-2002 |
| A | 3-Acceptable, Ful | 999999999 | 01-JUN-2001 |
| A | 5-Exceptional, Ou | 999999999 | 01-JUN-2000 |
| A | 5-Exceptional, Ou | 999999999 | 01-JUN-1999 |
| A | 4-Exc Fully Succ, | 898988899 | 01-JUN-1998 |
| A | 4-Exc Fully Succ, | 899988999 | 01-JUN-1997 |
| A | 4-Exc Fully Succ, | 899998999 | 01-SEP-1996 |

LANGUAGE . . .

| ID | PROFICIANCY LEVEL | READ | SPEAK | LISTN | TEST DATE |
|---|---|---|---|---|---|

TRAINING DATA . . .

| TYP | TITLE | TOTAL HOURS | GRAD DATE |
|---|---|---|---|
| CAW | USAF NAF PERS MGT CR | 4 | |
| NFR | CLUB MGR AMER NATL | 40 | |
| NTB | CUST SERV EXCELL | 6 | |
| BLC | NATL REST ASSN IMCEA | 24 | |
| NSF | WW SVS CMDR/CLUB MGR | 40 | |
| CFA | SVS COMM WSHOP | 40 | |
| LEO | EQL OPPORTUNITY 2000 | 4 | |
| CA2 | COMM IN THE WRKPLACE | 2 | |
| LAA | NEW EMP ORIENT | 2 | |
| LAA | NEW EMPLOYEE ORIENT | 4 | |
| FXH | HIV AIDS AWARENESS | 2 | |

OCCUPATIONAL CERTIFICATIONS . . .

| TYPE | TITLE | DATE |
|---|---|---|

# PLAINTIFF'S

# EXHIBIT

# 5

## CIVILIAN RATING OF RECORD

*(Please read Privacy Act Statement on reverse before completing this form.)*

| EMPLOYEE *(Last Name, First, Middle Initial)* | SSN | ORGANIZATION | PAY PLAN | SERIES | GRADE/STEP | SALARY W/O LOCALITY PAY |
|---|---|---|---|---|---|---|
| DALE, BRIDGET E. | 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 | 42 SPTG/SVB | GS | 0301 | 12/07 | |

| APPRAISAL PERIOD | FROM: 20010401 | TO: 20020331 | EFFECTIVE DATE: 20020601 |
|---|---|---|---|

- Part A normally contains one to seven critical elements.
- Rate the critical element*(s)* in Part A by placing an "X" in the appropriate block*(s)*. The overall performance rating is derived from the ratings of the critical elements. A rating of "Does not meet" on any critical element results in a determination that overall performance is unacceptable. An Unacceptable rating is the basis for initiating a performance improvement plan and requires proper documentation. Contact the Civilian Personnel Flight for assistance.
- Complete Part B, "Impact on Mission Accomplishment" for GS-14s and GS-15s *(bullet format, limited to 9 lines)*. Optional to complete for others.
- Complete Part C, "Award Justification" for those being recommended for an award *(bullet format, limited to 9 lines)*.

**PART A. Position Requirements.** *(Was the employee's performance Unacceptable or Acceptable on the Performance Plan's critical elements?)*

| | DOES NOT MEET | MEETS | | DOES NOT MEET | MEETS |
|---|---|---|---|---|---|
| ELEMENT 1 | | X | ELEMENT 8 | | |
| ELEMENT 2 | | X | ELEMENT 9 | | |
| ELEMENT 3 | | X | ELEMENT 10 | | |
| ELEMENT 4 | | X | ELEMENT 11 | | |
| ELEMENT 5 | | X | ELEMENT 12 | | |
| ELEMENT 6 | | | ELEMENT 13 | | |
| ELEMENT 7 | | | ELEMENT 14 | | |

OVERALL PERFORMANCE RATING

*R - ACCEPTABLE: Rated "Meets Standards" on all critical elements.*

*N - UNACCEPTABLE: Rated "Does Not Meet Standards" on one or more critical elements.*

**PART B. Impact on Mission Accomplishment.** *(Mandatory completion required for GS-14s/15s.)*

**PART C. Award Justification.** *(Part B may serve as Part C award justification.)*

**PART D. Performance Award.**

| AWARD *(Enter "P"-Performance or "Q"-QSI)* | AWARD PERCENTAGE OR AMOUNT *(If P (cash), enter as a percentage, e.g., 1.5, or a dollar amount)* | OTHER AWARD *(For time-off awards, state number of hours)* |
|---|---|---|
| | | |

Certification for Time-Off Award *(as applicable)*: I have considered fully the wage costs and productivity loss in granting this time-off award. The amount of time-off granted is commensurate with the individual's contribution or accomplishment. I also considered the unit's workload and unit employees' leave projections and certify that the employee can schedule the time-off award in addition to other scheduled leave. I also considered other available forms of recognition in determining the amount of this time-off award. *Note: Ensure the number of time-off award hours previously awarded to this employee this leave year plus this award does not exceed 80 hours.*

**PART E. Certification.** *(Certify by having rater, reviewer, award approving official (if required), and employee sign and date this form.)*

| | DATE *(YYYYMMDD)* |
|---|---|
| RATER *(Supervisor's signature and duty phone)* MARIAN R. SCAVELLI, 953-5717 [signature] | |
| VIEWER *(Signature and duty phone)* KATHIE A. GUTIERREZ, 953-5717 [signature] | 20030115 |
| AWARD APPROVING OFFICIAL *(If required, signature and duty phone)* | |
| EMPLOYEE *(Receipt acknowledged. Signature does not indicate agreement or disagreement.)* [signature] | 20030115 |

AF FORM 860A, 19990701 *(EF-V3)*

PART F. Civilian Promotion Appraisal.

This appraisal is used for competitive inservice placement actions, including promotions, reassignments or demotions to positions with known growth potential, and other such instances. The ratings on this form are used as a sort factor in determining final rank order of employees having substantially equal knowledge, skills and abilities, when the number of candidates exceeds the number of employees who can be referred to the selecting official for consideration.

## APPRAISAL FACTORS - MANNER OF PERFORMANCE *(Do not complete if employee is a GS-15)*

Appraisal factors listed below represent work behaviors that can be observed in the context of the employee's current position and are considered predictive of performance at the next higher level. Based on your observations of the employee's performance, rate EVERY appraisal factor. Use the following scale in making the ratings. Place the number *(1-9)* in the block preceding the factor.

| LOW RANGE | CENTRAL RANGE | HIGH RANGE |
|---|---|---|
| 1. Very Poor | 4. Slightly Below Fully Successful | 7. Above Fully Successful |
| 2. Far Below Fully Successful | 5. Fully Successful | 8. Far Above Fully Successful |
| 3. Below Fully Successful | 6. Slightly Above Fully Successful | 9. Outstanding |

| Rating | Factor | Description |
|---|---|---|
| 9 | *1. WORK EFFORT:* | *Exerts effort and shows initiative in starting, carrying out and completing tasks; spends time effectively performing work.* |
| 9 | *2. ADAPTABILITY TO WORK:* | *Picks up new ideas and procedures quickly; is easy to instruct; can adapt to the demands of new situations; understands and carries out oral or written instructions.* |
| 8 | *3. PROBLEM SOLVING:* | *Devises effective solutions to problems or identifies effective methods and procedures for accomplishing objectives.* |
| 9 | *4. WORKING RELATIONSHIPS:* | *Sensitive to the behavior of fellow workers, supervisors and subordinates; maintains effective working relationships with others.* |
| 8 | *5. COMMUNICATION:* | *Communicates clearly and effectively, whether orally or in writing.* |
| 8 | *6. WORK PRODUCTIVITY:* | *Productive during work time; completes his/her work projects, duties and tasks in a timely manner.* |
| 9 | *7. SELF-SUFFICIENCY:* | *Works independently with little need for additional supervision or help; follows through well; accomplishes all tasks required to complete a job on his/her own.* |
| 9 | *8. SKILL IN WORK:* | *Performs job-associated tasks well, whether they require physical, technical, professional, supervisory or managerial skills, is considered very skillful on the job.* |
| 9 | *9. WORK MANAGEMENT:* | *Effectively plans and organizes work; properly follows or implements management procedures, directives, regulations, or technical orders; ability to direct or evaluate or substitute for absent supervisor.* |

PRIVACY ACT STATEMENT

*Authority: 10 U.S.C. 8013 and Executive Order 9397.*

*Purpose: The social security number is needed to correctly identify the employee.*

*Routine Use: This information may be disclosed to another agency if the employee transfers to another agency.*

*Disclosure is Voluntary: However, without it, it may affect the ability to accurately identify the employee and the records.*

# CIVILIAN PERFORMANCE AND PROMOTION APPRAISAL
## PERFORMANCE RATING

| APPRAISAL PERIOD | |
|---|---|
| FROM 98/04/01 | TO 99/03/31 |

| EMPLOYEE (LAST, FIRST, MI) | PAY PLAN | SERIES | GRADE | STEP | SALARY |
|---|---|---|---|---|---|
| DALE BRIDGET E | GS | 0301 | 12 | 06 | $52,776.00 |

| SOCIAL SECURITY NUMBER | ORGANIZATION / OFFICE SYMBOL | EFFECTIVE DATE |
|---|---|---|
| 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 | 76 SUPPORT GROUP SVB | 99/06/01 |

APPRAISAL FACTORS - MANNER OF PERFORMANCE

If you assign a rating of 1, 2, 8, or 9, write the number of the appraisal factor beside the performance element in which you observed the work behavior.

| LOW RANGE | CENTRAL RANGE | HIGH RANGE |
|---|---|---|
| 1. Very Poor | 4. Slightly Below Full Succ | 7. Above Full Succ |
| 2. Far Below Fully Successful | 5. Fully Successful | 8. Far Above Full Succ |
| 3. Below Fully Successful | 6. Slightly Above Full Succ | 9. Outstanding |

| Factor | Rating |
|---|---|
| 1. WORK EFFORT : Exerts effort and shows initiative in starting, carrying out, and completing tasks; spends time effectively performing work. | 9 |
| 2. ADAPTABILITY TO WORK : Picks up new ideas and procedures quickly; is easy to instruct; can adapt to the demands of new situations; understands and carries out oral and written instructions. | 9 |
| 3. PROBLEM SOLVING : Devises effective solutions to problems or identifies effective methods and procedures for accomplishing objectives. | 9 |
| 4. WORKING RELATIONSHIPS : Sensitive to behavior of fellow workers, supervisors, and subordinates; maintains effective working relationships with others. | 9 |
| 5. COMMUNICATION : Communicates clearly and effectively, whether orally or in writing. | 9 |
| 6. WORK PRODUCTIVITY : Productive during work time; completes work projects, duties, and tasks in a timely manner. | 9 |
| 7. SELF-SUFFICIENCY : Works independently with little need for additional supervision or help; follows through well; accomplishes all tasks required to complete a job on his/her own. | 9 |
| 8. SKILL IN WORK : Performs job-associated tasks well, whether they require physical, technical, professional, supervisory, or managerial skills; is considered very skillful on the job. | 9 |
| 9. WORK MANAGEMENT : Effectively plans and organizes work; properly follows or implements management proedures, directives, regulations, or technical orders; ability to direct or evaluate or substitute for absent supervisor. | 9 |

OVERALL PERFORMANCE RATING : SU

SUPERIOR : Employee exceeds all elements of the performance plan. (Describe on reverse.)
EXCELLENT : Employee exceeds more than one-half of the critical elements and meets all other elements. (Describe on reverse.)
FULLY SUCCESSFUL : Employee meets the requirements of all elements of the performance plan and may exceed at least one critical element but not more than half.
MINIMALLY ACCEPTABLE : Employee does not meet the requirements of one or more noncritical elements of the performance plan, but meets the requirements for all critical elements. (Describe on reverse.)
UNACCEPTABLE : Employee does not meet the requirements of one or more critical elements of the performance plan. (Describe on reverse.)

| TYPE OF RATING | AWARD DATA (% of Salary) |
|---|---|
| ANNUAL | 1.15 |

SA-ALC FORM H-21 JAN 93
COMPUTER GENERATED

0 4 JUN 1999

CZ5-3

# CIVILIAN RATING OF RECORD

*(Please read Privacy Act Statement on reverse before completing this form.)*

| _OYEE *(Last Name, First, Middle Initial)* | SSN | ORGANIZATION | PAY PLAN | SERIES | GRADE/STEP | SALARY W/O LOCALITY PAY |
|---|---|---|---|---|---|---|
| Dale, Bridget E. | 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 | 42 SPTG/SV | GS | 0301 | 12/07 | $62,309 |

APPRAISAL PERIOD FROM: 20000401 TO: 20010331 EFFECTIVE DATE: 200006[illegible]1

- Part A normally contains one to seven critical elements.
- Rate the critical element*(s)* in Part A by placing an "X" in the appropriate block*(s)*. The overall performance rating is derived from the ratings of the critical elements. A rating of "Does not meet" on any critical element results in a determination that overall performance is unacceptable. An Unacceptable rating is the basis for initiating a performance improvement plan and requires proper documentation. Contact the Civilian Personnel Flight for assistance.
- Complete Part B, "Impact on Mission Accomplishment" for GS-14s and GS-15s *(bullet format, limited to 9 lines)*. Optional to complete for others.
- Complete Part C, "Award Justification" for those being recommended for an award *(bullet format, limited to 9 lines)*.

PART A. Position Requirements. *(Was the employee's performance Unacceptable or Acceptable on the Performance Plan's critical elements?)*

| | DOES NOT MEET | MEETS | | DOES NOT MEET | MEETS |
|---|---|---|---|---|---|
| ELEMENT 1 | | X | ELEMENT 8 | | |
| ELEMENT 2 | | X | ELEMENT 9 | | |
| ELEMENT 3 | | X | ELEMENT 10 | | |
| ELEMENT 4 | | X | ELEMENT 11 | | |
| ELEMENT 5 | | X | ELEMENT 12 | | |
| ELEMENT 6 | | | ELEMENT 13 | | |
| ELEMENT 7 | | | ELEMENT 14 | | |

OVERALL PERFORMANCE RATING: R

*R - ACCEPTABLE: Rated "Meets Standards" on all critical elements.*
*N - UNACCEPTABLE: Rated "Does Not Meet Standards" on one or more critical elements.*

PART B. Impact on Mission Accomplishment. *(Mandatory completion required for GS-14s/15s.)*

PART C. Award Justification. *(Part B may serve as Part C award justification.)*

- Superlative contributions and actions dramatically improved business operations and their bottom line
- Played leading and aggressive role in bringing the financially depleted Officers' Club back into the black
  -- Completely revamped menus, developed cost cards, rebuilt Foodtrack and established inventory control
  -- Instituted rigid accountability in all areas of training; cut high labor costs with optimum use of staff
- Dramatically improved employee morale through strong professional drive for excellence and sincere concern for welfare of subordinates; provided timely recognition for superior performance
- Revamped dilapidated bowling center with new cosmic-bowling-themed carpeting, paint, fixtures and balls
- Highly imaginative and resourceful; restored body of old golf cart and converted it into a salad bar!
- Hosted highly successful events during AETC Commanders' Conference; lauded by all in attendance

PART D. Performance Award.

| AWARD *(Enter "P"-Performance or "Q"-QSI)* | AWARD PERCENTAGE OR AMOUNT *(If P (cash), enter as a percentage, e.g., 1.5, or a dollar amount)* | OTHER AWARD *(For time-off awards, state number of hours)* |
|---|---|---|
| P | 3.5 % | |

Certification for Time-Off Award *(as applicable)*: I have considered fully the wage costs and productivity loss in granting this time-off award. The amount of time-off granted is commensurate with the individual's contribution or accomplishment. I also considered the unit's workload and unit employees' leave projections and certify that the employee can schedule the time-off award in addition to other scheduled leave. I also considered other available forms of recognition in determining the amount of this time-off award. *Note: Ensure the number of time-off award hours previously awarded to this employee this leave year plus this award does not exceed 80 hours.*

PART E. Certification. *(Certify by having rater, reviewer, award approving official (if required), and employee sign and date this form.)*

| | DATE *(YYYYMMDD)* |
|---|---|
| RATER *(Supervisor's signature and duty phone)* ig Cox 953-5078 [signature] | 20010430 |
| REVIEWER *(Signature and duty phone)* Kathie Gutierrez 953-5717 [signature] | 20010430 |
| AWARD APPROVING OFFICIAL *(If required, signature and duty phone)* | |
| EMPLOYEE *(Receipt acknowledged. Signature does not indicate agreement or disagreement.)* [signature] | 2001-04-30 |

AF FORM 860A, 19990701 *(EF-V3)*

C 25-[illegible]

PART F. Civilian Promotion Appraisal.

appraisal is used for competitive inservice placement actions, including promotions, reassignments or demotions to positions with known growth potential, and other such instances. The ratings on this form are used . a sort factor in determining final rank order of employees having substantially equal knowledge, skills and abilities, when the number of candidates exceeds the number of employees who can be referred to the selecting official for consideration.

## APPRAISAL FACTORS - MANNER OF PERFORMANCE *(Do not complete if employee is a GS-15)*

Appraisal factors listed below represent work behaviors that can be observed in the context of the employee's current position and are considered predictive of performance at the next higher level. Based on your observations of the employee's performance, rate EVERY appraisal factor. Use the following scale in making the ratings. Place the number *(1-9)* in the block preceding the factor.

| LOW RANGE | CENTRAL RANGE | HIGH RANGE |
|---|---|---|
| 1. Very Poor | 4. Slightly Below Fully Successful | 7. Above Fully Successful |
| 2. Far Below Fully Successful | 5. Fully Successful | 8. Far Above Fully Successful |
| 3. Below Fully Successful | 6. Slightly Above Fully Successful | 9. Outstanding |

| Rating | Factor | Description |
|---|---|---|
| 9 | *1. WORK EFFORT:* | *Exerts effort and shows initiative in starting, carrying out and completing tasks; spends time effectively performing work.* |
| 9 | *2. ADAPTABILITY TO WORK:* | *Picks up new ideas and procedures quickly; is easy to instruct; can adapt to the demands of new situations; understands and carries out oral or written instructions.* |
| 9 | *3. PROBLEM SOLVING:* | *Devises effective solutions to problems or identifies effective methods and procedures for accomplishing objectives.* |
| 9 | *4. WORKING RELATIONSHIPS:* | *Sensitive to the behavior of fellow workers, supervisors and subordinates; maintains effective working relationships with others.* |
| 9 | *5. COMMUNICATION:* | *Communicates clearly and effectively, whether orally or in writing.* |
| 9 | *6. WORK PRODUCTIVITY:* | *Productive during work time; completes his/her work projects, duties and tasks in a timely manner.* |
| 9 | *7. SELF-SUFFICIENCY:* | *Works independently with little need for additional supervision or help; follows through well; accomplishes all tasks required to complete a job on his/her own.* |
| 9 | *8. SKILL IN WORK:* | *Performs job-associated tasks well, whether they require physical, technical, professional, supervisory or managerial skills, is considered very skillful on the job.* |
| 9 | *9. WORK MANAGEMENT:* | *Effectively plans and organizes work; properly follows or implements management procedures, directives, regulations, or technical orders; ability to direct or evaluate or substitute for absent supervisor.* |

PRIVACY ACT STATEMENT

*Authority: 10 U.S.C. 8013 and Executive Order 9397.*

*Purpose: The social security number is needed to correctly identify the employee.*

*Routine Use: This information may be disclosed to another agency if the employee transfers to another agency.*

*Disclosure is Voluntary: However, without it, it may affect the ability to accurately identify the employee and the records.*

# CIVILIAN PERFORMANCE AND PROMOTION APPRAISAL
## PERFORMANCE RATING

| APPRAISAL PERIOD | |
|---|---|
| FROM | TO |
| 19990401 | 20000331 |

| EMPLOYEE (LAST, FIRST, MI) | PAY PLAN | SERIES | GRADE | STEP | SALARY |
|---|---|---|---|---|---|
| DALE BRIDGET | GS | 0301 | 12 | 07 | 56345.00 |

| SOCIAL SECURITY NUMBER | ORGANIZATION/OFFICE SYMBOL | EFFECTIVE DATE |
|---|---|---|
| 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 | 76 SUPPORT GROUP SVB | 2000601 |

**APPRAISAL FACTORS - MANNER OF PERFORMANCE**

If you assign a rating of 1,2, 8, or 9, write the number of the appraisal factor beside the performance elment in which you observed the work behavior.

| LOW RANGE | CENTRAL RANGE | HIGH RANGE |
|---|---|---|
| 1. Very Poor | 4. Slightly Below Fully Successful | 7. Above Fully Successful |
| 2. Far Below Fully Successful | 5. Fully Successful | 8. Far Above Fully Successful |
| 3. Below Fully Successful | 6. Slightly Above Fully Successful | 9. Outstanding |

1. **WORK EFFORT:** Exerts effort and shows initiative in starting, carrying out, and completing tasks; spends time effectively performing work. — 9

2. **ADAPABILITY TO WORK:** Picks up new ideas and procedures quickly; is easy to instruct; can adapt to the demands of new situations; understands and carries out oral and written instructions. — 9

3. **PROBLEM SOLVING:** Devises effective solutions to problems or identifies effective methods an procedures for accomplishing objectives. — 9

4. **WORKING RELATIONSHIPS:** Sensitive to behavior of fellow workers, supervisors, and subordinates; maintains effective working relationships with others. — 9

5. **COMMUNICATION:** Communicates clearly and effectively, whether orally or in writing. — 9

6. **WORK PRODUCTIVITY:** Productive during work time; completes work projects, duties, and tasks in a timely manner. — 9

7. **SELF-SUFFICIENCY:** Works independently with little need for additional supervision or help; follows through well; accomplishes all tasks required to complete a job on his/her own. — 9

8. **SKILL IN WORK:** Performs job-associated tasks well, whether they require physical, technical, professional, supervisory, or managerial skills; is consider very skillful on the job. — 9

9. **WORK MANAGEMENT:** Effectively plans and organizes work; properly follows or implements management procedures, directives, regulations, of technical orders; ability to direct or evaluate or substitute for absent supervisor. — 9

**OVERALL PERFORMANCE RATING:** SU

**SUPERIOR:** Employee exceeds all elements of the performance plan. *(Describe on reverse.)*

**EXCELLENT:** Employee exceeds more than one-half of the critical elements and meets all other elements. *(Describe on reverse)*

**FULLY SUCCESSFUL:** Employee meets the requirements of all elements of the performance plan, and may exceed at least one critical element but not more than half.

**MINIMALLY ACCEPTABLE:** Employee does not meet the requirements of one or more noncritical elements of the performance plan, but meets the requirements for all critical elements. *(Describe on reverse)*

**UNACCEPTABLE:** Employee does not meet the requirements of one or more critical elements of the performance plan. *(Describe on reverse)*

| TYPE OF RATING | AWARD DATA *(% Of Salary)* |
|---|---|
| ANNUAI | .90 |

SA-ALC FORM H-21, AUG 94 (EF)

DCPDS 2BA

| EVALUATION AND SUBSTANTIATION OF RATING | CRITICAL | NON-CRITICAL |
|---|---|---|
| Performance elements rated as "Did Not Meet" or Exceeded must be substantiated by a brief narrative statement. This statement must be in accordance with AFR 40-452, para 2-10, identify at least four performance elements of which three must beCritical and at least one Non-critical | | |
| 1E. Exceeded. Worked with Environmental Management to reduce amounts of chemicals utilized on golf course. She implemented a monthly tree- planting program that will significantly reduce the amount of grass to maintain while enhancing aesthetics of the course. | X | |
| 2E. Exceeded. Managed the Flight's Safety program. Worked closely with ALC Safety office to ensure workforce and management well educated in terms of safety. Ensured working conditions were safe. | X | |
| 3E. Exceeded. Developed cost saving and innovative programs that enhanced the Quality of Life for the Kelly Community. Also, built the Officers' Club into a Highly utilized full service Conference Center. | | X |
| 4E. Exceeded. Employee met the standard. | | X |
| 5E. Exceeded. Provided outstanding oversight and stewardship for the Business Support Flight and it's activities which included the Bowling Center, Golf Course. Officers' Club and Enlisted Clubs. | X | |
| 6E. Exceeded. Employee exceeded the standard by complying with all supervisory duties, administering appraisals, performance standards and all other supervisory requirements. | X | |
| 7E. Exceeded. Employee exceeded all required timelines and suspenses. | X | |
| 8E. Exceeded. Employee exceeded all corporate standards. | | X |

| | DATE |
|---|---|
| RATER *(Supervisor's signature and duty phone) (Performance Plan used for this rating is current and certified.)* [signature] | 5 June 00 |
| REVIEWER *(Signature)* Thomas M Watters | 5 June 00 |
| ENDORSER *(Optional signature)* David R. Beecroft | 5 Jun 00 |
| COMMENTS BY ENDORSER | |
| AWARD APPROVING OFFICIAL *(Signature)* Jesse R. Sela | 09 JUN 2000 |
| EMPLOYEE SIGNATURE *(Receipt acknowledged; signature does not indicate agreement or disagreement.)* [signature] | 9th June 00 |

SA-ALC FORM H-21 (REVERSE) AUG 94

| EVALUATION AND SUBSTANTIATION OF RATING | CRITICAL | NON-CRITICAL |
|---|---|---|
| Performance elements rated as "Did Not Meet" or "Exceeded" must be substantiated by a brief narrative statement. This statement must be in accordance with AFR 40-452, para 2-10, identify at least four performance elements of which three must be Critical and at least one Non-critical. | | |
| 1E. Exceeded. Provided outstanding oversight and stewardship for the Business Support Flight and it's activities which included the Bowling Center, Golf Course, Officer's Club and Enlisted Clubs. | X | |
| 2E. Exceeded. Developed many cost saving and innovative programs that significantly enhanced the Quality of Life for the Kelly Community. Also, built the Officer's Club into a highly utilized full service Conference Center. Clubs went from least to most profitable in the command. Remarkable Golf Course recovery after worst flood in 100 years. | X | |
| 3E. Exceeded. Special emphasis was given to staff development in preparation for realignment. Counciling, mentoring, training, workshops were all utilized to improve staff's marketability. Managed an outstanding EEO program as noted by Climate Assessment. | X | |
| 4E. Exceeded. Worked closely with Environmental Management to reduce amounts of chemicals utilized on golf course. She implemented a monthly tree-planting program that will significantly reduce the amount of grass to maintain while enhancing aesthetics of the course. | X | |
| 5E. Exceeded. Completed 100% of goals and objectives. Significantly exceeded financial goals for all flight activities. | | X |
| 6E. Exceeded. Actively fostered good working conditions between flights and activities by developing "Appreciation Days" for each of the respective activities. Also, improved employee recognition program. Moral is at an all time high. | | X |
| 7E. Exceeded. Meticulously managed the Flight's Safety Program. Worked closely with ALC Safety office to ensure workforce and management well educated in terms of safety. Ensured working conditions were safe. | X | |

| | |
|---|---|
| RATER (Supervisor's signature and duty phone) (Performance Plan used for this rating is current and certified.) Robert H Edmondson 5-7144 | DATE 10 May 99 |
| REVIEWER (Signature) Thomas M Walton 5-7144 | DATE 10 may 99 |
| ENDORSER (Optional signature) | DATE |
| COMMENTS BY ENDORSER | |
| AWARD APPROVING OFFICIAL (Signature) Jesse R. Vela | DATE 30 APR 1999 |
| EMPLOYEE SIGNATURE (Receipt acknowledged; signature does not indicate agreement or disagreement.) STOP TYPING HERE. | DATE 10 May 99 |

SA-ALC FORM H-21 (REVERSE) JAN 93

CX5-4

# CIVILIAN PERFORMANCE AND PROMOTION APPRAISAL PERFORMANCE RATING

| | | | |
|---|---|---|---|
| A | TYPE OF RATING *(Enter one of the following codes* *I - Initial A - Annual O - Other X - Informational* | APPRAISAL PERIOD *(YY/MM/DD)* FROM: 97/04/01 | TO: 98/03/31 |
| EMPLOYEE *(Last Name, First, Middle Initial)* DALE, BRIDGET E. | | SSN 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 | SALARY $ 49728 |

| PAY PLAN | SERIES | GRADE | STEP | ORGAN | OFFICE SYMBOL | EFFECTIVE DATE |
|---|---|---|---|---|---|---|
| GS | 0301 | 12 | 05 | SV | SVR | 98/06/01 |

## OVERALL PERFORMANCE RATING

***INSTRUCTIONS:*** *Overall Performance Rating is derived from the ratings of the performance elements on page 2.*

OVERALL PERFORMANCE RATING: E

- ***S*** - *SUPERIOR: Employee exceeds all of the elements of the performance plan.*
- ***E*** - *EXCELLENT: Employee exceeds more than one-half of the critical elements and meets all other elements.*
- ***F*** - *FULLY SUCCESSFUL: Employee meets the requirements of all of the elements of the performance plan.*
- ***M*** - *MINIMALLY ACCEPTABLE: Employee does not meet the requirements of one or more noncritical elements of the performance plan, but meets the requirements for all critical elements.*
- ***U*** - *UNACCEPTABLE: Employee does not meet the requirements of one or more critical elements of the performance plan.*

## APPRAISAL FACTORS - MANNER OF PERFORMANCE *(Do not complete if employee is a GS/GM-15 or higher.)*

*Appraisal factors listed below represent work behaviors that can be observed in the context of the employee's current position as reflected in the Performance Plan (AF Form 860). Based on your observations of the employee's performance, rate EVERY appraisal factor. Use the following scale in making the ratings.*

| LOW RANGE | CENTRAL RANGE | HIGH RANGE |
|---|---|---|
| 1. Very Poor | 4. Slightly Below Fully Successful | 7. Above Fully Successful |
| 2. Far Below Fully Successful | 5. Fully Successful | 8. Far Above Fully Successful |
| 3. Below Fully Successful | 6. Slightly Above Fully Successful | 9. Outstanding |

| Rating | Factor | Description |
|---|---|---|
| 8 | ***1. WORK EFFORT:*** | *Exerts effort and shows initiative in starting, carrying out and completing tasks; spends time effectively performing work.* |
| 9 | ***2. ADAPTABILITY TO WORK:*** | *Picks up new ideas and procedures quickly; is easy to instruct; can adapt to the demands of new situations; understands and carries out oral or written instructions* |
| 8 | ***3. PROBLEM SOLVING:*** | *Devises effective solutions to problems or identifies effective methods and procedures for accomplishing objectives.* |
| 9 | ***4. WORKING RELATIONSHIPS:*** | *Sensitive to the behavior of fellow workers, supervisors, and subordinates; maintains effective working relationships with others.* |
| 8 | ***5. COMMUNICATION:*** | *Communicates clearly and effectively, whether orally or in writing.* |
| 8 | ***6. WORK PRODUCTIVITY*** | *Productive during work time; completes his/her work projects, duties, and tasks in a timely manner.* |
| 8 | ***7. SELF-SUFFICIENCY:*** | *Works independently with little need for additional supervision or help; follows through well; accomplishes all tasks required to complete a job on his/her own.* |
| 9 | ***8. SKILL IN WORK:*** | *Performs job-associated tasks well, whether they require physical, technical, professional, supervisory, or managerial skills, is considered very skillful on the job.* |
| 9 | ***9. WORK MANAGEMENT:*** | *Effectively plans and organizes work; properly follows or implements management procedures, directives, regulations, or technical orders; ability to direct or evaluate or substitute for absent supervisor.* |

## PERFORMANCE AWARD NOMINATION

| AWARD *(Enter "P" - Performance or "Q" - QSI)* | AWARD PERCENTAGE *(Enter as percentage, e.g., 1.5)* | OTHER AWARD |
|---|---|---|
| | | |

| | |
|---|---|
| RATER *(Supervisor's signature and duty phone) (Performance Plan used for this rating is current and certified.)* [signature] GARY T. SNAPP, Major, USAF, DSN: 238-5854 | DATE *(YY/MM/DD)* 98/04/09 |
| REVIEWER *(Signature)* [signature] BASIL S. NORRIS, JR., Colonel, USAF, 100 SPTG/CD | DATE *(YY/MM/DD)* 98/05/11 |
| ENDORSER *(Optional, signature)* | DATE *(YY/MM/DD)* |
| AWARD APPROVING OFFICIAL *(Signature)* [signature] — APPROVED AWARD .5% | DATE *(YY/MM/DD)* 980511 |

AF FORM 860A, MAY 96 *(EF-V1)* *(PerFORM PRO)* PREVIOUS EDITION WILL BE USED.

CX5-9

| PE NO. | EVALUATION AND SUBSTANTIATION OF RATING<br>Performance elements rated as "Did Not Meet" or used as justification for an award nomination must be substantiated by a brief narrative statement. Written substantiation is also required for appraisal factors rated 1 or 2.<br>*(Additional entries may be made on plain bond)* | CRITICAL/ NONCRITICAL<br>*Enter:*<br>*C - Critical*<br>*N - Noncritical* | EVALUATION<br>*Enter:*<br>*N - Did Not Meet*<br>*M - Met*<br>*E - Exceeded* |
|---|---|---|---|
| 1 | The most diverse and taxing of all flights, this flight also gets the greatest scrutiny. With staffing challenges, caused by long lead times to fill vacancies and a limited employment pool, she's been able to maintain a solid business program in spite of decreasing TDY traffic, changes in per diem and other imposed limitations | C | E |
| 2 | | C | M |
| 3 | In spite of changes within the business environment (per diem rate change, slow down in transient traffic, Ms Dale has been able to squeeze profits from unlikely sources like Auto Skills Development and the Officer's Club. | C | E |
| 4 | Handed the toughest challenges of offering quality programs in substandard facilities, she's masterfully employed her fix-it team to enhance facilities and build atmosphere – two smashing successes, relocation of the Pizza Cove and conversion of a dark gloomy dining room into an upscale eatery – the American Café. Also was able to farm out critical dining arrangements during the renovation. | C | E |
| 5 | Ms. Dale has increased her presence in her facilities and has improved morale and attitude by displaying a willingness to get her hands dirty and get involved in her activities. | N | E |
| 6 | | | |
| 7 | | | |

EMPLOYEE SIGNATURE *(Receipt acknowledged; signature does not indicate agreement or disagreement.)* [signature]

DATE *(YY/MM/DD)* 98-4-24

AF FORM 860A, MAY 96 *(REVERSE) (EF-V1) (PerFORM PRO)*

C25-10

# CIVILIAN PERFORMANCE AND PROMOTION APPRAISAL PERFORMANCE RATING

| A | TYPE OF RATING *(Enter one of the following codes* *I - Initial* *A - Annual* *0 - Other* *X - Informational* | APPRAISAL PERIOD *(YY/MM/DD)* FROM: 96/07/01 | TO: 97/03/31 |
|---|---|---|---|

| EMPLOYEE *(Last Name, First, Middle Initial)* | SSN | SALARY |
|---|---|---|
| DALE, BRIDGET E. | 239904588 | $ 48,610 |

| PAY PLAN | SERIES | GRADE | STEP | ORGAN | OFFICE SYMBOL | EFFECTIVE DATE |
|---|---|---|---|---|---|---|
| GS | 0301 | 12 | 05 | SV | SVR | 97/06/01 |

## OVERALL PERFORMANCE RATING

***INSTRUCTIONS:*** *Overall Performance Rating is derived from the ratings of the performance elements on page 2.*

OVERALL PERFORMANCE RATING: E

- *S - SUPERIOR: Employee exceeds all of the elements of the performance plan.*
- *E - EXCELLENT: Employee exceeds more than one-half of the critical elements and meets all other elements.*
- *F - FULLY SUCCESSFUL: Employee meets the requirements of all of the elements of the performance plan.*
- *M - MINIMALLY ACCEPTABLE: Employee does not meet the requirements of one or more noncritical elements of the performance plan, but meets the requirements for all critical elements.*
- *U - UNACCEPTABLE: Employee does not meet the requirements of one or more critical elements of the performance plan.*

## APPRAISAL FACTORS - MANNER OF PERFORMANCE *(Do not complete if employee is a GS/GM-15 or higher.)*

*Appraisal factors listed below represent work behaviors that can be observed in the context of the employee's current position as reflected in the Performance Plan (AF Form 860). Based on your observations of the employee's performance, rate EVERY appraisal factor. Use the following scale in making the ratings.*

| LOW RANGE | CENTRAL RANGE | HIGH RANGE |
|---|---|---|
| 1. Very Poor | 4. Slightly Below Fully Successful | 7. Above Fully Successful |
| 2. Far Below Fully Successful | 5. Fully Successful | 8. Far Above Fully Successful |
| 3. Below Fully Successful | 6. Slightly Above Fully Successful | 9. Outstanding |

| Rating | Factor | Description |
|---|---|---|
| 8 | ***1. WORK EFFORT:*** | *Exerts effort and shows initiative in starting, carrying out and completing tasks; spends time effectively performing work.* |
| 9 | ***2. ADAPTABILITY TO WORK:*** | *Picks up new ideas and procedures quickly; is easy to instruct; can adapt to the demands of new situations; understands and carries out oral or written instructions* |
| 9 | ***3. PROBLEM SOLVING:*** | *Devises effective solutions to problems or identifies effective methods and procedures for accomplishing objectives.* |
| 9 | ***4. WORKING RELATIONSHIPS:*** | *Sensitive to the behavior of fellow workers, supervisors, and subordinates; maintains effective working relationships with others.* |
| 8 | ***5. COMMUNICATION:*** | *Communicates clearly and effectively, whether orally or in writing.* |
| 8 | ***6. WORK PRODUCTIVITY*** | *Productive during work time; completes his/her work projects, duties, and tasks in a timely manner.* |
| 9 | ***7. SELF-SUFFICIENCY:*** | *Works independently with little need for additional supervision or help; follows through well; accomplishes all tasks required to complete a job on his/her own.* |
| 9 | ***8. SKILL IN WORK:*** | *Performs job-associated tasks well, whether they require physical, technical, professional, supervisory, or managerial skills, is considered very skillful on the job.* |
| 9 | ***9. WORK MANAGEMENT:*** | *Effectively plans and organizes work; properly follows or implements management procedures, directives, regulations, or technical orders; ability to direct or evaluate or substitute for absent supervisor.* |

## PERFORMANCE AWARD NOMINATION

| AWARD *(Enter "P" - Performance or "Q" - QSI)* | AWARD PERCENTAGE *(Enter as percentage, e.g., 1.5)* | OTHER AWARD |
|---|---|---|
| | | |

| | DATE *(YY/MM/DD)* |
|---|---|
| RATER *(Supervisor's Signature and duty phone) (Performance Plan used for this rating is current and certified.)* [signature] JIM STEVENSON, GS-13, 3818 | 97/04/18 |
| REVIEWER *(Signature)* [signature] CHARLES R. CARR, Major, USAF, 3818 | 97/04/11 |
| ENDORSER *(Optional, signature)* | |
| AWARD APPROVING OFFICIAL *(Signature)* [signature] — APPROVED AWARD 6.5% | 970608 |

AF FORM 860A, MAY 96 *(EF-V1)* (PerFORM PRO) PREVIOUS EDITION WILL BE USED.

CX5-1

| PE NO. | EVALUATION AND SUBSTANTIATION OF RATING<br>Performance elements rated as "Did Not Meet" or used as justification for an award nomination must be substantiated by a brief narrative statement. Written substantiation is also required for appraisal factors rated 1 or 2.<br>*(Additional entries may be made on plain bond)* | CRITICAL/ NONCRITICAL<br>*Enter:*<br>*C - Critical*<br>*N - Noncritical* | EVALUATION<br>*Enter:*<br>*N - Did Not Meet*<br>*M - Met*<br>*E - Exceeded* |
|---|---|---|---|
| 1 | Ms. Dale has been very active supervising her flight. She has also supervised the Family Member Support Flight during the absence of the flight chief. Along with supervising two flights, she has been active in overseeing three construction projects. She regularly visits all activities. During recent inspection, her flight was rated Excellent and the Child Development Center received one of the highest ratings ever given. | C | E |
| 2 | | C | M |
| 3 | Ms. Dale has a good business savvy. During these times of alcohol deglamourization and overall reduction in club operations, RAF Mildenhall clubs enjoy membership percentage well above the Air Force average. | C | E |
| 4 | A solid five year plan for the Community Support Flight has been established and is continually reviewed. The construction of a new Enlisted Club is well in the planning stages and ground breaking is expected to occur during the first of next year. | C | E |
| 5 | Ms. Dale has an excellent management style that allows her employees to maintain a sense of ownership. She is an advocate for equal opportunity and encourages self-development for all of her managers. | N | E |
| 6 | | | |
| 7 | | | |

| EMPLOYEE SIGNATURE *(Receipt acknowledged; signature does not indicate agreement or disagreement.)* | DATE *(YY/MM/DD)* |
|---|---|
| [signature] | 97-6-19 |

CZ5-1:

# CIVILIAN PERFORMANCE AND PROMOTION APPRAISAL PERFORMANCE RATING

| A | TYPE OF RATING (Enter one of the following codes<br>I - Initial A - Annual O - Other X - Informational | APPRAISAL PERIOD (YY/MM/DD)<br>FROM: 95/07/01 TO: 96/06/30 |
|---|---|---|

| EMPLOYEE (Last Name, First, Middle Initial) | SSN | SALARY |
|---|---|---|
| Dale, Bridget E. | 239904588 | $ 47518 |

| PAY PLAN | SERIES | GRADE | STEP | ORGAN | OFFICE SYMBOL | EFFECTIVE DATE |
|---|---|---|---|---|---|---|
| GS | 0301 | 12 | 05 | SV | SVB | 96/09/01 |

## OVERALL PERFORMANCE RATING

*INSTRUCTIONS: Overall Performance Rating is derived from the ratings of the performance elements on page 2.*

OVERALL PERFORMANCE RATING: E

- *S - SUPERIOR: Employee exceeds all of the elements of the performance plan.*
- *E - EXCELLENT: Employee exceeds more than one-half of the critical elements and meets all other elements.*
- *F - FULLY SUCCESSFUL: Employee meets the requirements of all of the elements of the performance plan.*
- *M - MINIMALLY ACCEPTABLE: Employee does not meet the requirements of one or more noncritical elements of the performance plan, but meets the requirements for all critical elements.*
- *U - UNACCEPTABLE: Employee does not meet the requirements of one or more critical elements of the performance plan.*

## APPRAISAL FACTORS - MANNER OF PERFORMANCE *(Do not complete if employee is a GS/GM-15 or higher.)*

*Appraisal factors listed below represent work behaviors that can be observed in the context of the employee's current position as reflected in the Performance Plan (AF Form 860). Based on your observations of the employee's performance, rate EVERY appraisal factor. Use the following scale in making the ratings.*

| LOW RANGE | CENTRAL RANGE | HIGH RANGE |
|---|---|---|
| 1. Very Poor | 4. Slightly Below Fully Successful | 7. Above Fully Successful |
| 2. Far Below Fully Successful | 5. Fully Successful | 8. Far Above Fully Successful |
| 3. Below Fully Successful | 6. Slightly Above Fully Successful | 9. Outstanding |

| Rating | Factor | Description |
|---|---|---|
| 8 | *1. WORK EFFORT:* | *Exerts effort and shows initiative in starting, carrying out and completing tasks; spends time effectively performing work.* |
| 9 | *2. ADAPTABILITY TO WORK:* | *Picks up new ideas and procedures quickly; is easy to instruct; can adapt to the demands of new situations; understands and carries out oral or written instructions* |
| 9 | *3. PROBLEM SOLVING:* | *Devises effective solutions to problems or identifies effective methods and procedures for accomplishing objectives.* |
| 9 | *4. WORKING RELATIONSHIPS:* | *Sensitive to the behavior of fellow workers, supervisors, and subordinates; maintains effective working relationships with others.* |
| 9 | *5. COMMUNICATION:* | *Communicates clearly and effectively, whether orally or in writing.* |
| 8 | *6. WORK PRODUCTIVITY* | *Productive during work time; completes his/her work projects, duties, and tasks in a timely manner.* |
| 9 | *7. SELF-SUFFICIENCY:* | *Works independently with little need for additional supervision or help; follows through well; accomplishes all tasks required to complete a job on his/her own.* |
| 9 | *8. SKILL IN WORK:* | *Performs job-associated tasks well, whether they require physical, technical, professional, supervisory, or managerial skills, is considered very skillful on the job.* |
| 9 | *9. WORK MANAGEMENT:* | *Effectively plans and organizes work; properly follows or implements management procedures, directives, regulations, or technical orders; ability to direct or evaluate or substitute for absent supervisor.* |

## PERFORMANCE AWARD NOMINATION

| AWARD (Enter "P" - Performance or "Q" - QSI) | AWARD PERCENTAGE (Enter as percentage. e.g., 1.5) | OTHER AWARD |
|---|---|---|
| P | | |

| | DATE (YY/MM/DD) |
|---|---|
| RATER (Supervisor's signature and duty phone) (Performance Plan used for this rating is current and certified.)<br>[signature] x3818 | 96 07 02 |
| REVIEWER (Signature)<br>[signature] 3818 | 96/07/29 |
| ENDORSER (Optional, signature) | |
| AWARD APPROVING OFFICIAL (Signature)<br>[signature] — APPROVED AWARD: .75% | 960809 |

| PE NO. | EVALUATION AND SUBSTANTIATION OF RATING<br>Performance elements rated as "Did Not Meet" or used as justification for an award nomination must be substantiated by a brief narrative statement. Written substantiation is also required for appraisal factors rated 1 or 2. *(Additional entries may be made on plain bond)* | CRITICAL/ NONCRITICAL<br>*Enter:*<br>*C - Critical*<br>*N - Noncritical* | EVALUATION<br>*Enter:*<br>*N - Did Not Meet*<br>*M - Met*<br>*E - Exceeded* |
|---|---|---|---|
| 1 | 1E. Exceed. Ms Dale has helped put new energy into the Bowling Center by assisting in giving it a completely new look. Self help was used to complete may of the upgrades. Several things that have been accomplished this reporting period are; painting, new children's area, lounge with slot machines plus new carpet was put in Feb. 96. The Marauder Sports lounge continues to be a success. Sports store is doing well despite the renovation of the Post Office. | C | E |
| 2 | 2E. Met. Ms Dale was the team champion for customer service on the squadrons USA. The Services squadrons USA was one of the best packages in the Wing. She regularly visits her facilities and conducts staff meetings. Although writing is not her long suit she has made efforts towards corporate standards, OI's, and awards within her flight. | C | M |
| 3 | 3E. Exceed. Ms Dale has a strong understanding of business. She is active within her flight looking at things such as cost of goods, labor, portion control and inventory. Three of her four activities are well within their financial goals. The exception being the Officers Club. It appears that this will take direct hands on to get fixed. | C | E |
| 4 | 4E. Exceed. Ms Dale hired an individual for the squadron to manage 332's and self help project in the squadron. Through her leadership and the individuals team spirit the squadron has had many things completed. This assisted in giving the squadron the best shot at getting the AF Services Eubank award for 1995. A tremendous amount of effort went into the design work for the new Enlisted club complex so it could meet congressional timelines. New shelving was completed for the warehouse. | C | E |
| 5 | 5E. Exceed. Ms Dale believes in empowerment. She lets her managers make decisions that affect their operation. She is an advocate of equal opportunity concepts and attended sexual harassment training. Ms Dale is an outgoing positive style manager. | N | E |
| 6 | | | |
| 7 | | | |

| EMPLOYEE SIGNATURE *(Receipt acknowledged; signature does not indicate agreement or disagreement.)* | DATE *(YY/MM/DD)* |
|---|---|
| [signature] | 96-08-05 |

AF FORM 860A, MAY 96 *(REVERSE) (EF-V1) (PerFORM PRO)*

Bridget Dale continuation sheet

1E. She is still working a contracting issue for insurance. Once that is in place it will be a benefit the base and the squadron. 1,2,6,8

2E. 3,4,5,7

3E. 2,6,7,8,9

4E. The food cube for the bowling center was finally opened in May 96. She put a lot of hard work and coordination with CE to see to it that it was completed. 1,3,4,9

5E. 3,4,5,

KD

CIVILIAN PERFORMANCE AND PERFORMANCE [illegible] ION APPRAISAL

| APPRAISAL PERIOD | |
|---|---|
| FROM: [illegible] 01 | TO: 950630 |

| EMPLOYEE (Last Name, First, Middle Initial) | PAY PLAN | SERIES | GRADE | STEP | SALARY |
|---|---|---|---|---|---|
| DUFFE BRIDGET E | GS | 0301 | 12 | 04 | $45,214.00 (PA) |

| SOCIAL SECURITY NUMBER | ORGANIZATION/OFFICE SYMBOL | EFFECTIVE DATE (DAY / MONTH / YEAR) |
|---|---|---|
| 2 3 9 9 0 4 5 8 8 | 100 SER SQ DET /SVB MILDENHALL RAF UNKIN | 0 1 / SEP / 9 5 |

USE A NO. 2 PENCIL TO FILL IN THE BLOCKS.

TYPE OF RATING

input m

OVERALL PERFORMANCE RATING (Derived from the ratings of the performance elements on page 2.)

EXCELLENT: Employee exceeds more than one-half of the critical elements and meets all other elements.

MINIMALLY ACCEPTABLE: Employee does not meet the requirements of one or more noncritical elements of the performance plan, but meets the requirements for all critical elements.

APPRAISAL FACTORS - MANNER OF PERFORMANCE *(Do not complete if employee is a GS/GM-15 or higher.)*

Appraisal factors listed below represent work behaviors that can be observed in the context of the employee's current position as reflected in the Performance Plan (AF Form 860). Based on your observations of the employee's performance, rate EVERY appraisal factor. Use the following scale in making the ratings. If you assign a rating of 1, 2, 8, or 9, write the number of the appraisal factor beside the performance element in which you observed the work behavior in the space on the reverse. A brief substantiation is required for ratings of 1, 2, 8, or 9 observed only in performance elements rated "Met."

| LOW RANGE | CENTRAL RANGE | HIGH RANGE |
|---|---|---|
| 1. Very Poor | 4. Slightly Below Fully Successful | 7. Above Fully Successful |
| 2. Far Below Fully Successful | 5. Fully Successful | 8. Far Above Fully Successful |
| 3. Below Fully Successful | 6. Slightly Above Fully Successful | 9. Outstanding |

1. WORK EFFORT: Exerts effort and shows initiative in starting, carrying out and completing tasks; spends time effectively performing work.

2. ADAPTABILITY TO WORK: Picks up new ideas and procedures quickly; is easy to instruct; can adapt to the demands of new situations; understands and carries out oral or written instructions.

3. PROBLEM SOLVING: Devises effective solutions to problems or identifies effective methods and procedures for accomplishing objectives.

4. WORKING RELATIONSHIPS: Sensitive to the behavior of fellow workers, supervisors, and subordinates; maintains effective working relationships with others.

5. COMMUNICATION: Communicates clearly and effectively, whether orally or in writing.

6. WORK PRODUCTIVITY: Productive during work time; completes his/her work projects, duties, and tasks in a timely manner.

7. SELF-SUFFICIENCY: Works independently with little need for additional supervision or help; follows through well; accomplishes all tasks required to complete a job on his/her own.

8. SKILL IN WORK: Performs job-associated tasks well, whether they require physical, technical, professional, supervisory, or managerial skills, is considered very skillful on the job.

9. WORK MANAGEMENT: Effectively plans and organizes work; properly follows or implements management procedures, directives, regulations, or technical orders; ability to direct or evaluate or substitute for absent supervisor.

RATER (Supervisor's signature and duty phone) (Performance Plan used for this rating is current and certified.) [signature] 3818 — DATE

REVIEWER (Signature) [signature] — DATE

ENDORSER (Optional, signature) — DATE

AWARD APPROVING OFFICIAL (Signature) [signature] — APPROVED AWARD $452. 1.0% — DATE 28 Aug 95

AWARD DATA — % of Salary: 1.0 0

AF FORM 860A, MAR 89

EVALUATION AN[D SUB]STANTIATION OF RATING

Performance elements rated as "Did Not Meet" or "Exceeded" must be substantiated by a brief narrative statement.

| PE NO. | | CRITICAL | NONCRITICAL | EVALUATION: DID NOT MEET | MET | EXCEEDED | APPRAISAL FACTORS: WORK BEHAVIORS OBSERVED |
|---|---|---|---|---|---|---|---|
| 1E. | EXCEEDED. Ms Plouffe has put a lot of effort in getting her flights equipment replacement plan implemented. She has set up a replacement cycle goal for all her activities. She is a regular visitor to all of her facilities. She generally is at each one every day. Due to her experience in Unit Self Assessment (USA), she was chosen as the base deputy for its recent USA. A very comprehensive and valuable tool. | X | | | | X | 2,7,8,9 |
| 2E. | MET. Ms Plouffe is a key member of the squadron quality council. She participates in staff meetings as a key member. She conducts her flight staff meetings regular as well as individual management meetings as necessary. She has worked this year to ensure all operating instructions (OI) are up to date or rewritten if necessary. | X | | | X | | 4,5,9 |
| 3E. | EXCEEDED. Ms Plouffe has outstanding financial management skills. She personally worked a variety of issues to get the O'Club financial back on track. She reviewed labor costs, scheduling, hours of operation and food costs. She assists her flight in getting funds when and where needed. Her budgets are well thought out and on target. Cash handling in her flight is the strongest in the squadron. They are regularly rated excellent by Security Police. A recent audit proved what we already knew; we have some of the best controls and financial management within the Air Force. | X | | | | X | 1,2,3,6,8,9 |
| 4E. | EXCEEDED. Second only to her financial skills, Ms Plouffe's care and attention to her facilities has meant continued improvement throughout her flight. The Bowling Center has almost completely been transformed. It is now brighter, cleaner, and more homely due to her efforts. She had it painted, plants put in, moved out old equipment and replaced furniture as necessary. The Marauder Sports Lounge was renovated completely through self help efforts. This new and innovative facility has turned a previously losing NCO Club into a profitable Family entertainment center. | | X | | | X | 1,3,4,6,7,8,9 |
| 5E. | EXCEEDED. Ms Plouffe is a well liked leader. Her regular visits to her facilities has encouraged free flowing information exchanges that have led to good performance. She regularly looks a strength levels and manages as necessary. This management review on a regular basis has led to the reduction in staff at the Bowling Center but an increase at the Marauder Sports Lounge. This is true personnel management. 3,4,5,7 | X | | | | X | 3,4,5,7 |

COMMENTS BY ENDORSER

EMPLOYEE SIGNATURE *(Receipt acknowledged; signature does not indicate agreement or disagreement.)*

DATE

(Reverse of AF Form 860A, Mar 89)

CIVILIAN PERFORMANCE AND PROMOTION APPRAISAL
PERFORMANCE

APPRAISAL PERIOD — FROM: 101 TO: 940630

| EMPLOYEE (Last Name, First, Middle Initial) | PAY PLAN | SERIES | GRADE | STEP | SALARY |
|---|---|---|---|---|---|
| LOUFFE BRIDGET E | GS | 0301 | 12 | 04 | $44,327.00 (PA) |

SOCIAL SECURITY NUMBER: 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

ORGANIZATION/OFFICE SYMBOL: 100 SER SQ DET /MW MILDENHALL RAF UNKIN

EFFECTIVE DATE: DAY 01 MONTH SEP YEAR 94

USE A NO. 2 PENCIL TO FILL IN THE BLOCKS.

TYPE OF RATING: INITIAL / ANNUAL / OTHER / INFORMATIONAL

OVERALL PERFORMANCE RATING (Derived from the ratings of the performance elements on page 2.)

- EXCELLENT: Employee exceeds more than one-half of the critical elements and meets all other elements.
- MINIMALLY ACCEPTABLE: Employee does not meet the requirements of one or more noncritical elements of the performance plan, but meets the requirements for all critical elements.

APPRAISAL FACTORS - MANNER OF PERFORMANCE *(Do not complete if employee is a GS/GM-15 or higher.)*

Appraisal factors listed below represent work behaviors that can be observed in the context of the employee's current position as reflected in the Performance Plan (AF Form 860). Based on your observations of the employee's performance, rate EVERY appraisal factor. Use the following scale in making the ratings. If you assign a rating of 1, 2, 8, or 9, write the number of the appraisal factor beside the performance element in which you observed the work behavior in the space on the reverse. A brief substantiation is required for ratings of 1, 2, 8, or 9 observed only in performance elements rated "Met."

| LOW RANGE | CENTRAL RANGE | HIGH RANGE |
|---|---|---|
| 1. Very Poor | 4. Slightly Below Fully Successful | 7. Above Fully Successful |
| 2. Far Below Fully Successful | 5. Fully Successful | 8. Far Above Fully Successful |
| 3. Below Fully Successful | 6. Slightly Above Fully Successful | 9. Outstanding |

1. WORK EFFORT: Exerts effort and shows initiative in starting, carrying out and completing tasks; spends time effectively performing work.
2. ADAPTABILITY TO WORK: Picks up new ideas and procedures quickly; is easy to instruct; can adapt to the demands of new situations; understands and carries out oral or written instructions.
3. PROBLEM SOLVING: Devises effective solutions to problems or identifies effective methods and procedures for accomplishing objectives.
4. WORKING RELATIONSHIPS: Sensitive to the behavior of fellow workers, supervisors, and subordinates; maintains effective working relationships with others.
5. COMMUNICATION: Communicates clearly and effectively, whether orally or in writing.
6. WORK PRODUCTIVITY: Productive during work time; completes his/her work projects, duties, and tasks in a timely manner.
7. SELF-SUFFICIENCY: Works independently with little need for additional supervision or help; follows through well; accomplishes all tasks required to complete a job on his/her own.
8. SKILL IN WORK: Performs job-associated tasks well, whether they require physical, technical, professional, supervisory, or managerial skills, is considered very skillful on the job.
9. WORK MANAGEMENT: Effectively plans and organizes work; properly follows or implements management procedures, directives, regulations, or technical orders; ability to direct or evaluate or substitute for absent supervisor.

| | DATE |
|---|---|
| RATER (Supervisor's signature and duty phone) (Performance Plan used for this rating is current and certified.) [signature] | 14 Jul 94 |
| EWER (Signature) [signature] | 17 August 94 |
| ENDORSER (Optional, signature) | |
| AWARD APPROVING OFFICIAL (Signature) [signature] — APPROVED AWARD: 3% | 20 Aug 94 |

AWARD DATA — % of Salary: 3.00

AF FORM 860A, MAR 89

EVALUATION AN[...] STANTIATION OF RATING

Performance elements rated as "Did Not Meet" or "Exceeded" must be substantiated by a brief narrative statement.

| PE NO. | Narrative | CRITICAL | NONCRITICAL | DID NOT MEET | MET | EXCEEDED | APPRAISAL FACTORS WORK BEHAVIORS OBSERVED |
|---|---|---|---|---|---|---|---|
| 1E. | Exceeded. Ms Plouffe has been a breath of fresh air to the Membership Support Flight. She immediately established an equipment and furnishing program. The previous program was extremely weak. She provided enthusiasm resulting in new program activity ideas. She motivated her folks to develop annual activity planning. She is continually looking at policies and procedures making them better. As a result of her frequent visits to her activities she is known by all in her flight. | X | | | | X | 1,3,4,5,7 8 |
| 2E. | Exceeded. Ms Plouffe is a doer. She does not let work sit around. She does informal self- inspections monthly and fixes most things on the spot. Those things that she cannot fix immediately, she follows-up daily. She is a team player. She participates fully in staff meetings and communicates with her staff. She is an advocate of training. She continues to review Operating Instructions for content and accuracy. She possesses excellent writing skills. Her written material is clear, well written, and well thought out. | X | | | | X | 1,3,4,6,7, 9 |
| 3E. | Exceeded. Ms Plouffe's flight is the largest fund raising flight in the squadron. It is imperative that all activities in her flight manage their resources far better than most. Under her leadership, they have been doing great things. She worked with the Officers Club to redesign the lunch line in a more efficient manner. The result was better appearance at lower prices to the customer and greater profits to the club. Turning to the NCO Club, she again was able to make the difficult recommendation to close a losing operation so we can turn it into a positive venture. Cash handling procedures in her flight are solid. She is sensitive to budget accuracy and timeliness. Due to her effforts the budget products from her flight have improved significantly. | X | | | | X | 1,2,3,6,7 8,9 |
| 4E. | Exceeded. This area is where she has made the greatest impact. She looked at facility maintenance shortfalls and immediately identified quality fixes. In the five months she has been on board, she has worked the Officers Club, Galaxy Club, NCO Club, and Bowling Center projects. At the Officers Club, she has had the entire facility repainted, wallpapered, new carpets and drapes. In the Galaxy Club, the front foyer was repainted and decorated to brighten it up. The NCO Club is currently undergoing a facelift to change it to a Sports Lounge. The Bowling Center is also being repainted - not bad for five months on the job. She has set up an outstanding relationship with CE. We now work together as a team. Not satisfied with the status quo, she is ensuring we are planning for the future. | | X | | | X | 1,3,4,5,6, 7,8,9 |
| 5E. | Exceeded. Ms Plouffe is truly a TQ manager. She allows her staff to participate in management decisions and in fact decide much of their own work style. She provides regular feedback to subordinates encouraging their strengths and recognizing their weaknesses. She believes in recognizing her employees and does so regularly. She possesses a very positive leadership style that makes her well thought of by both supervisors and subordinates. | X | | | | X | 2,4,5,8 |

DO NOT WRITE IN THIS AREA

COMMENTS BY ENDORSER

EMPLOYEE SIGNATURE (Receipt acknowledged; signature does not indicate agreement or disagreement.)

DATE 18 Aug 94